G:\users docs\marcies\BB&T\J36670  Walter Blair\Opposition to TRO.wpd

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | | |
|---|---|---|
| **WALTER BLAIR**<br>**2600 Sunshine Court**<br>**Brookeville, MD 20833** | : <br> : <br> : <br> : | |
| **Petitioner** | : <br> : | |
| **v.** | : <br> : | Case No.  1:07-CV-01253 |
| | : | Judge Ellen S. Huvelle |
| **WILLIAM ZIEGLER**<br>**2754 Thornbrook Road**<br>**Ellicott City, MD 21042** | : <br> : <br> : | Next Event: Hearing on 7/20/07 for<br>    TRO and Preliminary Injunction |
| **and** | : <br> : | |
| **BRANCH BANKING AND TRUST COMPANY**<br>**1909 K Street, NW**<br>**Washington, DC 20006** | : <br> : <br> : | |
| **Respondents.** | : <br> : <br> : | |

## RESPONDENTS' OPPOSITION TO PETITION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

COMES NOW the Respondents, William Ziegler ("Ziegler") and Branch Banking and

Trust Company (hereinafter referred to as "BB&T" or "Bank"), by their attorneys, Jordan M.

Spivok, Philip J. Collins, and Protas, Spivok & Collins, LLC, and for opposition to Petitioner's

Petition for Temporary Restraining Order and Preliminary Injunction, aver the following:

## I.    SUMMARY OF ARGUMENT

Initially, the Court should be aware there is lacking complete diversity of citizenship for

jurisdictional purposes as both Petitioner and Respondent Ziegler are residents of the State of

Maryland.  See, Supplemental Affidavit of William J. Ziegler, attached as **Respondent's Exhibit 16.**

1

Distilled to its essence, the instant dispute concerns Petitioner's contention that he is current in his loan payments with BB&T. On July 12, 2007, BB&T filed a state foreclosure action in the Circuit Court for Prince George's County, Maryland (the "Litigation") based upon Petitioner's default in the terms and conditions of his promissory note. In a effort to avoid rights and remedies which BB&T chose to exercise pursuant to the loan documents, Petitioner has brought this action in a completely different jurisdiction alleging unfounded racial animosity that allegedly occurred in BB&T's decision to declare a default under Petitioner's loan and as the grounds for BB&T's refusal to halt an otherwise properly instituted state foreclosure action. Blair further complains that BB&T's actions have been orchestrated by BB&T's counsel, specifically Jordan M. Spivok.[1]  This is another example of a baseless accusation.  Counsel was not retained nor had any input until after the decision to demand the loan and the demand letter of June 28, 2007 was sent.

While a first reading of Blair's Motions for Temporary Restraining Order and Preliminary Injunction has some surface appeal, as the Court will later see, the allegations are totally false, contrived, without merit, lack any supporting factual predicate, and are interposed in bad faith and without substantial legal justification.  In actuality, claiming racial discrimination is Mr. Blair's

---

[1] Some backround regarding Jordan Spivok and Walter Blair may assist.  Spivok represented Suntrust Bank in a simple collection action filed against Blair in the Circuit Court for Montgomery County, Maryland seeking the sum of $14,692.04. See, *Suntrust Bank v. Walter Blair*, Civil 260187.  Blair filed a retaliatory action not only against Suntrust Bank, but also Jordan Spivok alleging negligence, malicious use of civil process and invasion of privacy.  The Circuit dismissed Blair's complaint with prejudice and entered an award of sanctions against Blair for Spivok's attorneys fees totaling $6,414.62.  Not unlike the case at bar, Blair claimed in Suntrust's action that he was not in default, that his payments were current and further alleged racial discrimination.  The court rejected these contentions, dismissed Blair's complaint with prejudice against SunTrust and its attorneys, and refused to vacate the judgment entered against him.  Copies of the Order dismissing Blair's Complaint and Amended Complaint and the Order granting sanctions pursuant to Md. Rule 1-341 are attached as Exhibits 1 and 2.

modus operandi in dealing with financial institutions, its counsel and officers of those financial institutions when their actions have a negative impact upon Blair's financial affairs.

What Petitioner fails to address and which is the core issue in this case, is: how demanding the payment in full following a two-month undisputed default under a Commercial Promissory Note, amounts to racial hatred? Respondents respectfully submit that this Honorable Court lacks both personal and subject matter jurisdiction to determine the merits of a Maryland state court foreclosure action. There is absent complete diversity of citizenship for jurisdictional purposes and invocation of a federal question under the guise of a 42 U.S.C. §1981 and §1983 claim of discrimination is manufactured, frivolous and not interposed in good faith or with any legal justification. Further, Petitioner has not and cannot demonstrate a substantial likelihood of success on the merits or that irreputable injury will occur if this Federal Court in the District of Columbia does not stop a Maryland state foreclosure. Further, Petitioner cannot sustain the burden of persuasion that BB&T will not be harmed by his action or that the public interest favors the relief sought. In short, this action involving Petitioner, a Maryland resident, who executed a Commercial Promissory Note in Prince George's County, Maryland, with the branch office of BB&T located in College Park, Maryland, and pledged real property and improvements in Prince George's County, Maryland, and where performance is to occur in Maryland against Respondent, William Ziegler, a Maryland resident, and BB&T, is nothing more than a belated attempt to manufacture jurisdiction and craft a strategy/red herring to make an "end run" around the Maryland foreclosure action by alleging racial discrimination. Petitioner's pleadings are not only poorly conceived but are without merit.

3

## II.    **STATEMENT OF FACTS.**

On September 28, 2004, BB&T made a commercial loan to Walter L. Blair in the original principal amount of $700,000.00. This loan of money is evidenced by a Commercial Promissory Note dated September 28, 2004 made by Walter L. Blair as maker, and payable to the order of BB&T ("Note"). See, Exhibit 3. The Note is secured by real property and improvements located in Prince George's County, Maryland, and secured by a Deed of Trust recorded April 7, 2005 among the Land Records for Prince George's County, Maryland. The Note is a 5-year Note, providing for repayment in 59 equal monthly installments of $5,689.80 each and a final payment due on September 15, 2009. The monthly installments are due on the 15th day of each month, commencing October 15, 2004.

As will be shown in Part IV, throughout the loan from its inception, Blair had a history of late payments and issuing checks which were later dishonored upon presentment by Blair's bank for insufficient funds. See, Exhibit 12. After June 15, 2007, Blair was two (2) installments behind, and had promised to cure this breach of contract by making payment on June 22, 2007. When he failed to cure the default, a credit decision was made by Jeffrey Sherman, Vice President of BB&T and the Regional Credit Officer in charge of Mr. Blair's account, to have BB&T formally declare the loan in default, accelerate the remaining unpaid balance due and owing, and make written demand for payment in full. Following demand for payment in full, Blair tendered a partial payment of $6,000.00 which was accepted by BB&T but informed Blair, by letter, that acceptance of this partial payment did not cure the demand for payment in full and further informed Blair that payment in full was due on or before Friday, July 6, 2007 at 2:00 p.m. See, Exhibit 5. On July 6, 2007, Blair issued a second check in the amount of $5,600.00 which the

4

Bank returned to Mr. Blair indicating that it would not accept this as a partial payment since demand for payment in full had been previously made. See, Exhibit 8. Blair refuses and continues to refuse to make payment in full and there currently remains due and owing by Blair to BB&T, an unpaid balance of $651,635.85, exclusive of interest, costs and attorney's fees as provided for by the Note and loan documents.

On July 11, 2007, BB&T, by its outside counsel, instituted a foreclosure action in the Circuit Court for Prince George's County, Maryland, against Blair and delivered this to the Circuit Court via Federal Express. The Court received the Federal Express package containing the foreclosure action on July 12, 2007. Presently, no date has been scheduled for the foreclosure sale, nor has any legal advertisement announcing the sale appeared in any local papers. Defendant, William J. Ziegler, a Maryland resident, is a Senior Vice President of BB&T and a Senior Credit Officer. Mr. Ziegler primarily oversees credit facilities to Borrowers which are in excess of $1,000,000.00. As Mr. Blair's loan was in the amount of $700,000.00, Mr. Ziegler had no personal involvement with the Blair loan, was not involved in the decision to formally declare a default and his only involvement with Mr. Blair was a 90-second telephone call initiated by Mr. Blair. See, Affidavit of William J. Ziegler, attached as **Exhibit 13** and Supplemental Affidavit attached as **Exhibit 16.**

## III.   ARGUMENT

### A.   FEDERAL COURTS IN THE ABSENCE OF STATUTE ARE NOT AUTHORIZED TO ISSUE INJUNCTIVE RELIEF OF A PENDING STATE COURT FORECLOSURE.

The Plaintiff has sought injunctive relief pursuant to Fed Rule Civ Proc. 65. Preliminarily, this court must determine whether it is authorized by Congress or the Constitution to issue

5

injunctive relief of the pending state court litigation. If authorized, this court must then determine if Plaintiff is entitled to injunctive relief. Pursuant to 28 U.S.C.A. § 2283, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The state court foreclosure action involves real estate located in Prince George's County, Maryland. Congress has not acted to permit the Federal Courts by way of an independent action solely seeking injunctive relief from intervening in another states foreclosure proceedings. In the absence of specific authority from Congress, it is respectfully suggested this court lacks the authority to proceed in this matter nor does it have in rem jurisdiction of the Property in Maryland. There is further lacking the required element of complete diversity of citizenship under 28 U.S.C. §1932, and the claims under 42 U.S.C. §1981 and §1983 are patently frivolous and contrived.

Petitioner does have other available remedies at law, which for unexplained reasons he has chosen to ignore. Specifically, the Maryland Rules provide a procedure if a defendant believes that a foreclosure has been impermissibly issued or maintained. Md. Rule 14-209(b) provides, "The debtor...may file a motion for an injunction to stay any sale or any proceedings after a sale under these rules." The Maryland Courts are clearly capable of rendering a just and proper decision as to whether the Litigation should proceed.

B.    **THE PETITIONER HAS NOT MET HIS ENTITLEMENT TO INJUNCTIVE RELIEF**

"A preliminary injunction may be granted only when the plaintiff demonstrates (1) a substantial likelihood of success on the merits; (2) that irreparable injury will result in the absence of the requested relief; (3) that no other parties will be harmed if temporary relief is granted; and

6

(4) that the public interest favors entry of a temporary restraining order." *Housing Study Group,*

*v. Kemp*, 736 F. Supp. 321, 324 (1990).

"In order to establish irreparable injury justifying preliminary injunctive relief, a plaintiff

must establish injury that is certain, great, and actual, not theoretical. The injury must be

imminent, creating a 'clear and present' need for equitable relief to prevent irreparable

harm."(quoting *Ashland Oil, Inc. v. Federal Trade Commission*, 409 F.Supp. 297, 307 (D.D.C.),

aff'd, 548 F.2d 977 (D.C.Cir 1976). Mere economic loss, in and of itself, does not constitute

irreparable harm. Id.

The Court's attention is respectfully invited to a review of the facts and law set forth in

Sections IV and V which lead inexorably to the conclusion that the Petitioner will not prevail on

the merits and that it is not in the public interest to enjoin the sale. Finally, Petitioner has

adequate remedies at law if it is found that the conduct of BB&T amounted to an unlawful or

wrongful foreclosure action.

IV.    **BASED UPON THE BORROWER HAVING COMMITTED EVENTS OF
       DEFAULT UNDER THE PROMISSORY NOTE, INCLUDING A FAILURE TO
       PAY WHEN DUE, THE BANK PROPERLY EXERCISED ITS RIGHT TO
       DECLARE A DEFAULT AND ACCELERATE THE REMAINING UNPAID
       BALANCE.**

On September 28, 2004, Respondent Branch Banking & Trust Co. (hereinafter

referred to as "BB&T" or the "Bank"), made a loan to the Petitioner Walter L. Blair (the

"Borrower") in the original principal amount of $700,000.00 (the "Loan"). The Loan is

evidenced by a Commercial Promissory Note dated September 28, 2004 in the original principal

amount of $700,000.00 made by Walter L. Blair and payable to the order of BB&T (the "Note").

A copy of the Note is attached hereto and incorporated herein by reference as **Respondents'**

**Exhibit 3**.

In order to induce BB&T to extend or continue to extend credit to the Borrower, the Borrower pledged a first lien position in real property and improvements located at 4701 Melbourne Place, College Park, Maryland 20740 (the "Property"). The Property is the subject of a Deed of Trust and Security Agreement dated September 28, 2004 and recorded among the land records of Prince George's County, Maryland, on April 7, 2005 at Liber 21783, Folio 111 (the "Deed of Trust") and serves as security for the Loan.

Under the terms of the Note, Borrower promised to make 59 equal monthly payments of principal and interest of $5,669.80 commencing October 15, 2004 and on the 15th day of each month thereafter until the maturity date of September 15, 2009, when the then remaining unpaid balance was due and payable in full.

One of the defined events of default in the Note is the "failure to pay any part of the principal or interest when due on this Note." See, **Exhibit 3, page 2**. The Note further provides that upon the occurrence of an event of default, the entire remaining unpaid indebtedness "shall immediately become due and payable at the option of the Bank without notice or demand of any kind, which are hereby waived." See, **Exhibit 3.**

In the case at bar, on June 28, 2007, when the Bank elected to declare a default and accelerate the remaining unpaid balance, the Borrower was two monthly installments in arrears on the Note. Thus, on June 28, 2007, it is beyond cavil the Borrower had breached the terms of the Note and the Bank properly exercised its right to formally declare a default, accelerate the unpaid balance and make formal demand upon the Borrower. Such was done by letter dated June 28, 2007, a copy of which is attached hereto as **Respondents' Exhibit 4.**

On July 2, 2007, following receipt of the June 28th demand letter, Borrower tendered a

8

payment of $6,000.00. To avoid any misunderstanding, on July 3, 2007, BB&T advised the

Borrower in writing that acceptance of the $6,000.00 amounted to a partial payment and did not

cure the default. It further advised its Borrower that the remaining unpaid balance must be paid

by 2:00 p.m. on Friday, July 6, 2007. A copy of this letter is attached as **Respondents' Exhibit**

**5,** and see, Affidavit of Rush Seale attached as **Exhibit 6.**

On July 6, 2007, Borrower tendered a check drawn on the IOLTA account of Blair

& Associates, LLC, in the amount of $5,600.00 and payable to the order of the Bank. A copy of

this check and Borrower's handwritten note is attached as **Defendants' Exhibit 7.**

As the Bank had previously informed the Borrower that partial payment would not

cure the default, on the same day it received the $5,600.00 check, BB&T forwarded a letter to the

Borrower returning the uncashed $5,600.00 check and specifically denied there was any

"agreement" between the parties to rescind the demand letter. This letter was "overnighted" to

the Borrower at his home address by Federal Express. A copy of this letter is attached as

**Respondents' Exhibit 8.**[2]

On June 28, 2007, pursuant to Section 3-304 of the Maryland Uniform Commercial Code,

Commercial Law Article Ann. Code of Md., Borrower's Note was overdue and acceleration of

the unpaid balance was proper. That section entitled "Overdue Instrument" provides:

> "(b)    with respect to an instrument payable at a definite time the
>         following rules apply:

---

[2] A Federal Express Supervisor telephonically informed Rush Seale of BB&T that it was unable to deliver the package as its employee was chased off the property by an angry individual. The Bank was further informed by FedEx that, despite their policy of attempting two or three deliveries, the courier "will not return to the house under any circumstances." A copy of an email from Mr. Seal to Bank counsel and Jeff Sherman is attached as **Respondents' Exhibit 9.** The original FedEx receipt with the courier's handwritten remarks of the threat and to get off the property and not come back are attached as **Respondents' Exhibit 10.** The $5,600.00 check has not been negotiated and BB&T has possession of the check since Petitioner did not permit delivery/return of it to him.

> (1) if the principal is payable in installments and a
> due date has not been accelerated, the instrument
> becomes overdue upon default under the instrument
> for nonpayment of an installment, and the instrument
> remains overdue until the default is cured.
>
> (3) if a due date with respect to principal has been
> accelerated, the instrument becomes overdue on the
> day after the accelerated due date."

The Bank, as holder of the Note, See, section 3-301 of the Maryland Uniform Commercial Code,

Commercial Law Article, Ann. Code of Md., was entitled to enforce the instrument against the

Borrower. Thusly, the Bank had an indisputable right to declare a default on June 28, 2007 when

the Borrower failed to make timely monthly payments in accordance with the terms set forth in

the Note. After acceleration, the Note further became due and owing in full after 2:00 p.m. July

6, 2007.

Petitioner, an experienced attorney, knew or should have known the terms of the

Note and what remedies were available to the Bank should he fail to perform as he promised.

As the Maryland Court of Appeals said in *Wolfe v. Madison National Bank*, 30 Md. App.

525, 528, 352 A.2d 914:

> "The . . . rule is that if there is no fraud, duress or mutual mistake, one who
> has the capacity to understand a written document who reads and signs it,
> or, without reading it or having it read to them, signs it, is bound by his
> signature as to all of its terms."

V.    **THE BANK'S DECISION TO DECLARE A DEFAULT AND ACCELERATE
THE UNPAID BALANCE WAS PREDICATED UPON THE BORROWER'S
DEFAULT, HIS PAST UNSATISFACTORY PERFORMANCE AND CREDIT
HISTORY. THE DECISION TO DEMAND WAS SOLELY BASED UPON
COMMERCIAL FACTORS AND NO OTHER REASON WHATSOEVER.
BORROWER'S RACE WAS NEVER CONSIDERED AND WAS NEVER A
FACTOR.**

As a regional bank operating on the east coast from North Carolina to Maryland, BB&T

10

appoints various Bank employees as regional credit officers. In this case, Jeffrey Sherman, a vice president of BB&T, was the regional credit officer involved and made the decision to declare a default and accelerate the Note. Mr. Sherman then instructed Rush Seale, another BB&T employee, to send the demand letter of June 28, 2007.[3]  See, Affidavit of Jeffrey Sherman attached as **Respondents' Exhibit 11.**

Prior to his decision to accelerate and demand payment in full, Mr. Sherman had never met the Borrower and had no idea whatsoever as to the Borrower's race when he made his credit decision. Indeed, in making the decision, Mr. Sherman factored into the decision-making process the following information at his disposal as impacting upon the Borrower's commercial credit worthiness:

(i)     Borrower had specifically promised Bruce Sharpe, a Senior Vice President at the Bank's College Park branch office, that the two overdue installments would be paid on June 22, 2007. Such was not done.

(ii)    On no less than eight (8) occasions, Borrower's checks tendered as Note payments were dishonored upon presentment and returned for insufficient funds. Of the 32 monthly installments due from the inception of the Loan through May 15, 2007, 25% (or one-fourth) of Borrower's payments were returned by Borrower' bank for insufficient funds in Borrower's account.

(iii)   A recent pattern of late payments had become apparent to Mr. Sherman. His review of the payment history of the Loan reveals Borrower had been 20 days or more

---

[3]  As Mr. Sherman was on vacation during the week of July 1 through July 6, Regina McCoy, another regional credit officer, signed the letters of July 3rd and July 6th in Mr. Sherman's absence.

11

late with payments on ten (10) occasions. Borrower had been more than 30 days late on making timely payments six (6) times during the course of the Loan. A copy of the payment history is attached as **Respondents' Exhibit 12**.

(iv)    In reviewing Borrower's credit report compiled by The Credit Bureau, Inc. ("CBI"), a consumer reporting agency of which BB&T is a subscriber, Mr. Sherman noticed that Borrower's "Beacon Score" was "465" on the June 27, 2007 report. A Beacon Score is an average credit scoring of individuals to evaluate their creditworthiness, compiled by CBI based upon numerous indicia including timely payments to other creditors, unsatisfactory payment reports, history of late payments, unpaid collection activity, judgments, inquiries, etc., as reported by other creditor grantors to CBI. A perfect Beacon Score approximates 800, an average Beacon Score is approximately 640 - 719, a Beacon Score of 639 or less is considered below average and 575 or below is considered as a very bad credit case. Current BB&T's policy would have resulted in declining to make a loan to an individual with a Beacon Score of 465 absent unusual or extraordinary circumstances. BB&T considers a 700 Beacon Score as "stellar." Petitioner's current CBI Beacon Score falls far short of the mark.

(v)    Judgment had been reported against the Borrower in February 2007 by Yellow Book Sales and Publications for unpaid directory advertising in its classified section in the amount of $13,724.00 (presumably for Borrower advertising his availability/services as a lawyer to the public).

(vi)    Bell South reported an unpaid telephone bill by the Borrower to The Credit Bureau, Inc., in March 2007.

12

(vii)    Cingular Wireless reported an unpaid collection action in the amount of
$541.00 in October 2006 against the Borrower.

(viii)    The CBI report further indicated that Borrower was delinquent in child support as
reported in June, 2007.

(ix)    In May, 2007, Borrower's home mortgage company reported to CBI that
Borrower was past due 30 days or more 12 out of the past 13 months in making his
mortgage payments.

(x)    Based upon Borrower's broken promise of payment to occur on June 22, 2007 to
Bruce Sharpe, BB&T's Senior Vice President, the fact the Borrower was two months past
due for installments under the Note, and based upon Borrower's history of late payments,
dishonored checks, low CBI score, and for the other factors set forth above, Mr. Sherman
elected  to formally declare a default, accelerate the balance due on the Note and demand
payment in full of Borrower's indebtedness.

(xi)    Significantly, while William Ziegler, a co-Defendant in this case, is a
Senior Vice President and a senior credit officer for the District of Columbia Metro
region, which includes Maryland, Mr. Ziegler had no day-to-day management of the Blair
Loan nor personal involvement in the decision to accelerate the Note. See, Affidavit of
William Ziegler attached as **Respondent's Exhibit 13.**  In short, there is no rational or
good faith justification to have named Mr. Ziegler as a party defendant.[4]

---

[4] Complete diversity of citizenship does not exist for jurisdictional purposes since Petitioner and
Respondent Ziegler are both Maryland residents.  An appropriate motion to dismiss shall be timely filed.

VI.    **THE ALLEGATION OF RACE DISCRIMINATION IS INTERPOSED IN BAD FAITH, WITHOUT SUBSTANTIAL LEGAL JUSTIFICATION AND SOLELY AS A RETALIATORY ACTION AGAINST THE BANK AND MR. ZIEGLER.  ITS SOLE PURPOSE IS TO OBFUSCATE BORROWER'S COMMERCIAL DEFAULT UNDER HIS NOTE AND DELAY AN OTHERWISE PROPERLY INSTITUTED STATE FORECLOSURE ACTION.**

Petitioner has a history of refusing to accept responsibility for his conduct and shifting the

focus to assert discrimination against him.  These types of crucial allegations, present in this case,

are generally unsupported by any facts.  In 1995, the District of Columbia Court of Appeals noted

such a character trait in denying Petitioner's admission to the District of Columbia Bar.[5]  A copy

of the Court's decision in the case of In Re: Walter L. Blair, Applicant, 665 A.2d 969 is attached

for the Court's convenience as **Respondents' Exhibit 14.**  Excerpts from this Opinion by the

highest court in the District of Columbia are both enlightening and educational as to Petitioner's

unfounded allegations of racial discrimination in the case sub judice:

> "Despite his assertion that he has been forthright with the Committee in these proceedings, his filing with the Committee have exhibited a serious lack of candor.  He has refused to accept responsibility for his conduct and shifted the focus at each opportunity to and asserted bias against him, lurking in the Committee's proceedings and recommendations . . . on the whole, Blair has failed to exhibit the 'qualities of truth speaking, of a high sense of honor, or granite discretion . . . that have . . . been compendiously described as (the) "moral character" necessary for the practice of law.'" Id at page 4.  The Court further noticed that Mr. Blair's practice, past and present, is one of "asserting improper personal attack(s) and making inappropriate allegations against others" . . . id at page 3.

The Opinion further notes that Petitioner forwarded a letter to Bar Counsel accusing an

attorney in the Corporation Counsel's office of misuse of position and blackmail.  The Court

opined that:

---

[5]  Since that time, Mr. Blair has become a member of the District of Columbia Bar.

14

"the Committee found that the . . . letter was a further instance of Blair's making baseless personal accusations." Ibid at page 3. Finally, and quite relevant to this case, is the Court's noting that Blair has a practice of " . . . past and present, of asserting improper personal attacks and making inappropriate allegations against others, and upon his lack of candor with the Committee. . ." The Court further noted that Blair had a penchant "for accusations against those who oppose him."

When Blair defaulted on a commercial promissory note with another regional bank in 2006, that bank instituted litigation against Blair in the Circuit Court for Montgomery County, Maryland, captioned *SunTrust Bank v. Walter L. Blair*, Civil No. 269442. As previously pointed out, Petitioner's reaction was to immediately file a separate baseless lawsuit against SunTrust Bank and its attorney which was dismissed with prejudice and wherein Blair was sanctioned and ordered to pay Spivok's attorney's fees. See, **Exhibit 2.**

In the Circuit Court action for Montgomery County, Petitioner attempted to interject, once again, the allegations of racial discrimination. A portion of the transcript of the hearing held May 22, 2006 is attached as **Respondents' Exhibit No. 15.** The Court's attention is respectfully invited to page 19, lines 23 through 25 and page 20, lines 1 through 18. To summarize that portion of the proceedings, the Court indicated there was no evidence in the case that SunTrust Bank based its decision to demand the Note on Petitioner's sex, gender, race or anything of that sort. Such is precisely what has occurred in the instant case. When BB&T elected to demand the Petitioner's Note based upon a payment default, Petitioner immediately attacked those who opposed him and has filed this suit alleging racial discrimination consistent with his modus operandi in forestalling his creditors.

## CONCLUSION

It is respectfully submitted that Petitioner's alleged claim of racial discrimination resulting in the Bank demanding his Note are sheer folly, without any merit whatsoever, lacking any factual

predicate, and simply interposed for what can only be described as improper purposes. It is extremely unlikely that Petitioner, at the hearing for a temporary restraining order or preliminary injunction will be able to demonstrate any evidence to persuade the trier of fact that he has been the victim of racial discrimination in the context of this commercial matter by Respondents.

For all of the above reasons, it is respectfully urged that this Court refuse to exercise its subject matter jurisdiction and deny the Petitioner's request for either a temporary restraining order or a preliminary injunction. Alternatively, should the Court grant Petitioner's request, then Respondents' request that such be conditioned upon the posting of a bond sufficient to indemnify the Respondents. Finally, it is respectfully urged that this Honorable Court refrain from exercising the grant of a temporary restraining order and/or preliminary injunction and require that Blair resort to the appropriate Maryland state court to seek such relief to stay the foreclosure. As complete diversity of jurisdiction does not exist and the claims of discrimination under Title 42 U.S.C. §1981and §1983, are contrived and frivolous, the Court's denial of the Rule 65 relief should be considered as a final judgment.

July 18, 2007                              Respectfully submitted,


                              _____/s/ Jordan M. Spivok_____
                              Jordan M. Spivok, DC Bar No. 65243
                              PROTAS, SPIVOK & COLLINS, LLC
                              4550 Montgomery Avenue
                              North Lobby Two, Suite 1125
                              Bethesda, Maryland 20814-3228
                              (301) 469-3600
                              Attorney for Respondents

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Opposition to Petitioner's Request for Temporary Restraining Order and Preliminary Injunction was delivered this 18th day of July, 2007 by regular mail, postage prepaid, to Walter L. Blair, Esquire, Blair and Lee, P.C. 4701 Melbourne Place, College Park, MD 20740.

/s/ Jordan M. Spivok
Jordan M. Spivok

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

WALTER L. BLAIR )
 )
            Plaintiff, )
 )
            v. )          Case no. 260187
 )
JORDAN M. SPIVOK, et al. )
 )
            Defendants )
 )

### ORDER DISMISSING COMPLAINT AND AMENDED COMPLAINT AGAINST JORDAN M. SPIVOK AND PROTAS, SPIVOK & COLLINS, LLC

Upon consideration of Jordan M. Spivok and Protas, Spivok & Collins, LLC's Motion to Dismiss or in the Alternative Motion for Summary Judgment and any opposition thereto, the court *(DE 9 + 25 + 26)  (DE 17)* having read and considered the same and being fully apprised, it is this _20th_ day of _June_, 2006, by the Circuit Court for Montgomery County, Maryland,

ORDERED, that Defendants Motion to Dismiss be and the same is hereby GRANTED; and it is further,

ORDERED, that the Plaintiff's complaint be DISMISSED WITH PREJUDICE, *and that all other outstanding Motions are Moot & it is further* ~~or in the alternative,~~

~~ORDERED, that summary judgment be entered in favor of Jordan M. Spivok and Protas, Spivok & Collins, LLC and against Walter L. Blair; and it is further,~~

ORDERED, that *a hearing is set for June 27, 2006 at 9:30 AM to determine an award of attorney's fees* ~~Walter L. Blair pay Jordan M. Spivok and Protas, Spivok & Collins, LLC attorneys in the sum of $_____~~, for violating Maryland Rule 1-341.

**ENTERED**

JUN 2 2 2006

Clerk of the Circuit Court
Montgomery County, Md.

_____
Judge, Circuit Court for Montgomery County, Maryland

EXHIBIT
1

-14-

Copies to:
Philip J. Collins
Protas, Spivok & Collins, LLC
4550 Montgomery Avenue, Suite 1125 North
Bethesda, Maryland 20814

Walter L. Blair
Blair & Lee, P.C.
4701 Melbourne Place
College Park, Maryland 20740

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

WALTER BLAIR

      Plaintiff

    v.                           Case No. 270612-V

JORDAN M. SPIVOK, et al

      Defendants

## <u>ORDER GRANTING SANCTIONS PURSUANT TO MARYLAND RULE 1-341</u>

This matter having come before the Court on June 27, 2006, for oral argument on the Defendant, Jordan M. Spivok's Motion for Sanctions (D.E. #9) and the opposition thereto (D.E. #17), and the Court having found that Walter Blair's action against Jordan M. Spivok was brought and maintained in bad faith and without substantial justification, and the Court having articulated the basis for this finding on the record on June 27, 2006, it is, by the Court, this 29th day of June 2006,

ORDERED, that the Defendant, Jordan M. Spivok's Motion for Sanctions be and the same hereby is *granted*; and it is further,

ORDERED, that the Plaintiff, Walter Blair pay to Jordan M. Spivok, the sum of Six Thousand Four Hundred and Fourteen Dollars and Sixty-Two Cents ($6,414.62), within 30 days of the date of this Order.

                                  _Joseph A. Dugan, Jr._
                                JUDGE JOSEPH A. DUGAN, JR.

**ENTERED**

JUL 0 6 2006

Clerk of the Circuit Court
Montgomery County, Md.

**EXHIBIT**
2

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

WALTER BLAIR

       Plaintiff

          v.                        Case No. 270612-V

JORDAN M. SPIVOK, et al

       Defendants

## ORDER GRANTING SANCTIONS PURSUANT TO MARYLAND RULE 1-341

This matter having come before the Court on June 27, 2006, for oral argument on the Defendant, Jordan M. Spivok's Motion for Sanctions (D.E. #9) and the opposition thereto (D.E. #17), and the Court having found that Walter Blair's action against Jordan M. Spivok was brought and maintained in bad faith and without substantial justification, and the Court having articulated the basis for this finding on the record on June 27, 2006, it is, by the Court, this 29th day of June 2006,

ORDERED, that the Defendant, Jordan M. Spivok's Motion for Sanctions be and the same hereby is *granted*; and it is further,

ORDERED, that the Plaintiff, Walter Blair pay to Jordan M. Spivok, the sum of Six Thousand Four Hundred and Fourteen Dollars and Sixty-Two Cents ($6,414.62), within 30 days of the date of this Order.

_____
JUDGE JOSEPH A. DUGAN, JR.

**ENTERED**

JUL 0 6 2006

Clerk of the Circuit Court
Montgomery County, Md.

EXHIBIT
2

Address: 12325 LOFT LN

**BB&T**   COLLEGE PARK _____, Maryland

SILVER SPRING, MD 20904-6634   Date: September 28, 2004

## PROMISSORY NOTE

THE UNDERSIGNED REPRESENTS THAT THE LOAN EVIDENCED HEREBY IS BEING OBTAINED FOR (select one) [X] BUSINESS/COMMERCIAL OR [ ] AGRICULTURAL PURPOSES. For value received, the undersigned, jointly and severally if more than one, promises to pay to **BRANCH BANKING AND TRUST COMPANY**, a North Carolina banking corporation (the "Bank"), or order, at any of Bank's offices in the above referenced city (or such other place or places that may be hereafter designated by Bank), the principal amount of
SEVEN HUNDRED THOUSAND DOLLARS & 00/100 _____
_____ Dollars ($ 700,000.00 _____ ), in immediately available coin or currency of the United States of America.

[X] Borrower shall pay a prepayment penalty as set forth in the Prepayment Penalty Addendum attached hereto.

Interest shall accrue from the date hereof on the unpaid principal balance outstanding from time to time at the:

[X] Fixed rate of ___7.500___ % per annum.

[ ] Variable rate of the Bank's Prime Rate plus _____ % per annum to be adjusted _____ as the Bank's Prime Rate changes, but shall in no event exceed the maximum rate allowed under applicable law. If checked here [ ], the interest rate will not exceed a(n) [ ] fixed [ ] average maximum rate of _____ % or a [ ] floating maximum rate of the greater of _____ % or the Bank's Prime Rate, but shall in no event exceed the maximum rate allowed under applicable law; and the interest rate will not decrease below a fixed minimum rate of _____ %. If an average maximum rate is specified, a determination of any required reimbursement of interest by Bank will be made: [ ] when Note is repaid in full by Borrower [ ] annually beginning on _____

[ ] Fixed rate of _____ % per annum through _____ which automatically converts on _____ to a variable rate equal to the Bank's Prime Rate plus _____ % per annum which shall be adjusted _____ as such Bank's Prime Rate changes, but shall in no event exceed the maximum rate allowed under applicable law.

[ ] _____ , but shall in no event exceed the maximum rate allowed under applicable law.

**Principal and interest are payable as follows**

[ ] Principal (plus any accrued interest not otherwise scheduled herein) }
[ ] Principal plus accrued interest } is due in full at maturity on _____ .

[X] Payable in consecutive ___Monthly___ installments of [ ] Principal [X] Principal and Interest } commencing on 10/15/2004 and continued on the same day of each calendar period thereafter, in __59__ equal payments of $ 5,669.80 , with one final payment of all remaining principal and accrued interest due on __09/15/2009__ .

[ ] ChoiceLine Payment Option: 2% of outstanding balance is payable monthly commencing on _____ and continuing on the same day of each month thereafter, with one final payment of all remaining principal and accrued interest due on _____

[ ] Accrued interest is payable _____ commencing on _____ and continuing on the same day of each calendar period thereafter, with one final payment of all remaining interest due on _____

[ ] Bank reserves the right in its sole discretion to adjust the fixed payment due hereunder _____ on _____ and continuing on the same day of each calendar period thereafter, in order to maintain an amortization period of no more than _____ months from the date of this Note. Borrower understands the payment may increase if interest rates increase.

[ ] Prior to an event of default, Borrower may borrow, repay, and reborrow hereunder pursuant to the terms of the Loan Agreement, hereinafter defined.
_____

[ ] Borrower hereby authorizes Bank to automatically debit from its demand deposit or savings account(s) with Bank, any payment(s) due under this Note on the date(s) due.

The undersigned shall pay to Bank a late fee in the amount of five percent (5%) of any installment past due for fifteen (15) or more days. When any installment payment is past due for fifteen (15) or more days, subsequent payments shall first be applied to the past due balance. In addition, the undersigned shall pay to Bank a returned payment fee if the undersigned or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Bank because of nonpayment due to nonsufficient funds.

All interest shall be computed and charged for the actual number of days elapsed on the basis of a year consisting of three hundred sixty (360) days. In the event periodic accruals of interest shall exceed any periodic fixed payment amount described above, the fixed payment amount shall be immediately increased, or additional supplemental interest payments required on the same periodic basis as specified above (increased fixed payments or supplemental payments to be determined in the Bank's sole discretion), in such amounts and at such times as shall be necessary to pay all accruals of interest for the period and all accruals of unpaid interest from previous periods. Such adjustments to the fixed payment amount or supplemental payments shall remain in effect for so long as the interest accruals shall exceed the original fixed payment amount and shall be further adjusted upward or downward to reflect changes in the variable interest rate; provided that unless elected otherwise above, the fixed payment amount shall not be reduced below the original fixed payment amount. However, Bank shall have the right, in its sole discretion, to lower the fixed payment amount below the original payment amount.

This note ("NOTE") is given by the undersigned in connection with the following agreements (if any) between the undersigned and the Bank:

Deed(s) of Trust / Mortgage(s) granted in favor of Bank as beneficiary / mortgagee:

[X] dated 09/28/2004 _____ in the maximum principal amount of $ 700,000.00 _____

granted by Walter L. Blair _____

[ ] dated _____ in the maximum principal amount of $ _____

granted by _____





1472MD (0312)

Security Agreement(s) granting a security interest to Bank:

☐ dated _____ given by _____

☐ dated _____ given by _____

☐ Securities Account Pledge and Security Agreement  dated _____, executed by _____

☐ Control Agreement(s) dated _____, covering  ☐ Deposit Account(s)  ☐ Investment Property
☐ Letter of Credit Rights  ☐ Electronic Chattel Paper

☐ Assignment of Certificate of Deposit, Security Agreement, and Power of Attorney (for Certificated Certificates of Deposit) dated _____, executed by _____

☐ Pledge and Security Agreement for Publicly Traded Certificated Securities dated _____, executed by _____

☐ Assignment of Life Insurance Policy as Collateral dated _____, executed by _____

☐ Loan Agreement dated _____, executed by Borrower and ☐ Guarantor(s).

☒ **Assignment of Leases and Rents dated 09-28-2004, executed by Walter L. Blair** .

**Secured Guaranty section:**

☐ _____
_____
_____

☐ _____
_____
_____

All of the terms, conditions and covenants of the above described agreements (the "Agreements") are expressly made a part of this Note by reference in the same manner and with the same effect as if set forth herein at length and any holder of this Note is entitled to the benefits of and remedies provided in the Agreements and any other agreements by and between the undersigned and the Bank.

No delay or omission on the part of the holder in exercising any right hereunder shall operate as a waiver of such right or of any other right of such holder, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or of any other right on any future occasion. Every one of the undersigned and every endorser or guarantor of this note regardless of the time, order or place of signing waives presentment, demand, protest and notices of every kind and assents to any one or more extensions or postponements of the time of payment or any other indulgences, to any substitutions, exchanges or releases of collateral if at any time there be available to the holder collateral for this note, and to the additions or releases of any other parties or persons primarily or secondarily liable.

The failure to pay any part of the principal or interest when due on this Note or to fully perform any covenant, obligation or warranty on this or on any other liability to the Bank by any one or more of the undersigned, by any affiliate of the undersigned (as defined in 11USC Section (101) (2)), or by any guarantor or surety of this Note (said affiliate, guarantor, or surety are herein called Obligor); or if any financial statement or other representation made to the Bank by any of the undersigned or any Obligor shall be found to be materially incorrect or incomplete; or in the event of a default under any of the Agreements or any other obligation of any of the undersigned or any Obligor; or in the event the Bank demands that the undersigned secure or provide additional security for its obligations under this Note and security deemed adequate and sufficient by the Bank is not given when demanded; or in the event one or more of the undersigned or any Obligor shall die, terminate its existence, allow the appointment of a receiver for any part of its property, make an assignment for the benefit of creditors, or where a proceeding under bankruptcy or insolvency laws is initiated by or against any of the undersigned or any Obligor; or in the event the Bank should otherwise deem itself, its security interest, or any collateral unsafe or insecure; or should the Bank in good faith believe that the prospect of payment or other performance is impaired; or if there is an attachment, execution, or other judicial seizure of all or any portion of the Borrower's or any Obligor's assets, including an action or proceeding to seize any funds on deposit with the Bank, and such seizure is not discharged within 20 days; or if final judgment for the payment of money shall be rendered against the Borrower or any Obligor which is not covered by insurance and shall remain undischarged for a period of 30 days unless such judgment or execution thereon is effectively stayed; or the termination of any guaranty agreement given in connection with this Note, then any one of the same shall be a material default hereunder and this Note and other debts due the Bank by any one or more of undersigned shall immediately become due and payable at the option of the Bank without notice or demand of any kind, which are hereby waived. From and after any event of default hereunder unless the Borrower is an individual, the original amount of the Note is $75,000 or less and this instrument or agreement is secured by residential real property, interest shall accrue on the sum of the principal balance and accrued interest then outstanding at the variable rate equal to the Bank's Prime Rate plus 5% per annum ("Default Rate") until such principal and interest have been paid in full, provided that such rate shall not exceed at any time the highest rate of interest permitted by the laws of the State of Maryland; and further provided that such rate shall also apply after judgement. In addition, upon default, the Bank may pursue its full legal remedies at law or equity, and the balance due hereunder may be charged against any obligation of the Bank to any party including any Obligor. Bank shall not be obligated to accept any check, money order, or other payment instrument marked "payment in full" on any disputed amount due hereunder, and Bank expressly reserves the right to reject all such payment instruments. Borrower agrees that tender of its check or other payment instrument so marked will not satisfy or discharge its obligation under this Note, disputed or otherwise, even if such check or payment instrument is inadvertently processed by Bank unless in fact such payment is in fact sufficient to pay the amount due hereunder.

Unless otherwise required under a Loan Agreement, if applicable, and as long as any indebtedness evidenced by this Note remains outstanding or as long as Bank remains obligated to make advances, the undersigned shall furnish annually an updated financial statement in a form satisfactory to Bank, which, when delivered shall be the property of the Bank.

The following paragraph does not apply if the Agricultural purpose block was checked on Page 1: Upon the occurrence or any default hereunder, the Borrower authorizes any attorney admitted to practice before any court of record in the United States to appear on behalf of the Borrower in any court having jurisdiction of any proceedings, or before any clerk thereof, or prothonotary or other court official, and to CONFESS JUDGMENT AGAINST THE BORROWER, WITHOUT PRIOR NOTICE OR OPPORTUNITY OF THE BORROWER FOR PRIOR HEARING, in favor of the Bank for the full amount due on this Note (including the outstanding Principal, accrued interest and any and all other costs, fees, expenses and late charges) plus court costs and attorney's fees of 15% of the total amount then due hereunder. The Borrower waives the benefit of any and every statute, ordinance or rule of court which may be lawfully waived conferring upon the Borrower any right or privilege of exemption, homestead rights, appeal, stay of execution or supplementary proceedings, inquisition, extension upon any levy on real estate or personal property, and any other relief from the enforcement or immediate enforcement of a judgment or related proceedings on a judgment. The authority and power to appear for and enter judgment against the Borrower shall not be exhausted by one or more exercises thereof, or by any imperfect exercise thereof, and shall not be extinguished by any judgment entered pursuant thereto; such authority and power may be exercised on one or more occasions, from time to time, in the same or different jurisdictions as often as the Bank shall deem necessary or advisable, for all of which this Note shall be sufficient authority.

THE BORROWER HEREBY (i) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY A JURY, AND (ii) WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH THE BANK AND THE BORROWER MAY BE PARTIES ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY PERTAINING TO THIS NOTE, ANY OF THE AGREEMENTS AND/OR ANY TRANSACTIONS, OCCURRENCES, COMMUNICATIONS, OR UNDERSTANDINGS (ORAL OR WRITTEN) RELATING IN ANY WAY TO THE DEBTOR-CREDITOR RELATIONSHIP BETWEEN THE PARTIES. THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS, WHETHER INITIATED BY THE BORROWER AGAINST THE BANK OR INITIATED BY THE BANK AGAINST THE BORROWER. THIS WAIVER OF JURY TRIAL IS SEPARATELY GIVEN, KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE BORROWER AND THE BORROWER HEREBY AGREES THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THE BANK IS HEREBY AUTHORIZED TO SUBMIT THIS NOTE TO ANY COURT HAVING JURISDICTION OVER THE SUBJECT MATTER AND THE BORROWER SO AS TO SERVE AS CONCLUSIVE EVIDENCE OF SUCH WAIVER OF RIGHT TO TRIAL BY JURY. THE BORROWER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND/OR THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

The term "Prime Rate," if used herein, means the rate of interest per annum announced by the bank from time to time and adopted as its prime rate, which is one of several rate indexes employed by the bank when extending credit. Any change in the interest rate resulting from a change in the Prime Rate shall become effective as of the opening of business on the effective date of the change. If this Note is placed with an attorney for collection, the undersigned agrees to pay, in addition to principal, interest and late fees, if any, all costs of collection, including but not limited to reasonable fees of the Bank's attorneys who are not salaried employees of the Bank. All obligations of the undersigned and of any Obligor shall bind his heirs, executors, administrators, successors, and/or assigns. Use of the masculine pronoun herein shall include the feminine and the neuter, and also the plural. If more than one party shall execute this Note, the term "undersigned" as used herein shall mean all the parties signing this Note and each of them, and all such parties shall be jointly and severally obligated hereunder. Wherever possible, each provision of this Note shall be interpreted in such a manner to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under such law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note. All of the undersigned hereby waive all exemptions and homestead laws. The proceeds of the loan evidenced by this Note may be paid to any one or more of the undersigned.

From time to time the maturity date of this Note may be extended, or this Note may be renewed in whole or in part, or a new note of different form may be substituted for this Note, or the rate of interest may be modified, or changes may be made in consideration of loan extensions, and the holder hereof, from time to time may waive or surrender, either in whole or in part any rights, guaranties, secured interest, or liens, given for the benefit of the holder in connection with the payment and the security of this Note; but no such occurrence shall in any manner affect, limit, modify, or otherwise impair any rights, guaranties or security of the holder not specifically waived, released, or surrendered in writing, nor shall the undersigned, or any obligor, either primarily or contingently, be released by reason of the occurrence of any such event. The holder hereof, from time to time, shall have the unlimited right to release any person who might be liable hereon, and such release shall not affect or discharge the liability of any other person who is or might be liable hereon. No waivers and modifications shall be valid unless in writing and signed by the Bank. The Bank may, at its option, charge any fees for the modification, renewal, extension, or amendment of any of the terms of the Note permitted by applicable law. In case of a conflict between the terms of this Note and the Loan Agreement or Commitment Letter issued in connection herewith, the priority of controlling terms shall be first this Note, then the Loan Agreement, and then the Commitment Letter. This Note shall be governed by and construed in accordance with the laws of Maryland.

---

### CREDIT LIFE AND DISABILITY INSURANCE

Subject to certain underwriting criteria and limitations, INDIVIDUAL BORROWERS AND ADDITIONAL CO-MAKERS HAVE THE RIGHT TO REQUEST CREDIT LIFE AND DISABILITY INSURANCE PROTECTION FOR THIS LOAN. One or two Borrowers/Co-makers may be covered by BB&T Credit Life Insurance and one Borrower/Co-maker may be covered by BB&T Credit Disability Insurance. However, the purchase of credit life and credit disability insurance from the Bank is not a condition of obtaining this loan.

I, the undersigned, desire the credit insurance with the cost and terms described below and promise to pay the premium of such insurance coverage. I understand that I may cancel this credit insurance at any time.

☐ Product I : Complete the following:

CREDIT LIFE INSURANCE    Effective Date    Term in Mos.    Initial Ins. Amount    Credit Life Premium

☐ Single    ☐ Level

☐ Joint    ☐ Decreasing          $        $

CREDIT DISABILITY INSURANCE

Effective Date and Terms in Mos.     Monthly Benefit Amount     Credit Disability Premium

Same as Credit Life Insurance Above    $       $

Credit Disability Insurance is subject to a 14-day elimination period and a 60-month maximum benefit period. Only the Borrower or Co-Maker who signs the first line under "Signature(s) of Borrower" is covered by Credit Disability Insurance.

Signature(s) of Borrower

Total Credit Life and Disability Insurance Premium

_____    Signature of Primary Borrower

_____    Signature of Secondary Borrower     $

---

**(SIGNATURES ON FOLLOWING PAGE)**

1472MD (0312)

# BB&T

## PROMISSORY NOTE SIGNATURE PAGE

Borrower: <u>WALTER L BLAIR</u>

Account Number: <u>9550570952</u>

Note Amount: $ <u>700,000.00</u>

Note Number: <u>00001</u>

Date: <u>09/28/2004</u>

**Notice of Right to Copy of Appraisal:** If a 1-4 family residential dwelling is pledged as collateral for this Note, you, the undersigned, have a right to a copy of the real estate appraisal report used in connection with your application for credit. If you wish to receive a copy, please notify in writing the branch office where you applied for credit. You must forward your request to the Bank no later than 90 days after the date of this Note. In your request letter, please provide your name, mailing address, appraised property address, the date of this Note, and the Account and Note Numbers shown on the front of this Note.

IN WITNESS WHEREOF, the undersigned, on the day and year first written above, has caused this note to be executed under seal and acknowledge receipt of a copy of this Agreement.

### If Borrower is a Corporation:

WITNESS:

_____

_____

_____
NAME OF CORPORATION

By: _____(SEAL)

Title: _____

By: _____(SEAL)

Title: _____

### If Borrower is a Partnership, Limited Liability Company, Limited Liability Partnership or Limited Liability Limited Partnership:

WITNESS:

_____

_____

_____

_____
NAME OF PARTNERSHIP, LLC, LLP OR LLLP

By: _____(SEAL)
GENERAL PARTNER OR MANAGER

By: _____(SEAL)
GENERAL PARTNER OR MANAGER

By: _____(SEAL)
GENERAL PARTNER OR MANAGER

### If Borrower is an Individual

WITNESS: _Brian Delette_    _____(SEAL)
WALTER L BLAIR

### Additional Co-makers

WITNESS:

_____    _____(SEAL)

_____    _____(SEAL)

_____    _____(SEAL)

_____    _____(SEAL)

PREPAYMENT FEE ADDENDUM TO PROMISSORY NOTE

THIS ADDENDUM is hereby made a part of the Promissory Note dated _September 28, 2004_ from _____ ("Borrower")
WALTER L BLAIR
payable to the order of Branch Banking and Trust Company ("Bank") in the principal amount of $ _700,000.00_ (including all
renewals, extensions, modifications and substitutions therefore, the "Note").

**CALCULATION OF PREPAYMENT FEE**

Each prepayment of the principal of the Note, in whole or in part and whether voluntary, mandatory, upon acceleration or otherwise, shall be made after
giving the Bank at least one day's prior notice and shall be accompanied by an additional amount deemed necessary by the Bank to compensate the Bank for
any losses, costs or expenses which the Bank may incur as a result of such prepayment. If Borrower makes a prepayment without having given prior notice to
the Bank, the prepayment compensation shall be payable on demand. The determination of prepayment compensation due the Bank hereunder shall be made
by the Bank in good faith and shall be conclusive absent manifest error.

The prepayment schedule/formula shall be (check applicable box):

[X] For any principal prepayment of the Note, the Borrower shall pay ____1___ % of the amount of the principal prepayment if made between _September 28, 2005_
_September 28, 2004_ and _September 27, 2005_ ; ____1___ % of the amount of the principal prepayment if made between _September 28, 2005_
and _September 27, 2006_ ; ____1___ % of the amount of the principal prepayment if made between _September 28, 2006_ and _September 27, 2007_ ;
____1___ % of the amount of the principal prepayment if made between _September 28, 2007_ and _September 27, 2008_ ; ___1__ % of the
amount of the principal prepayment if made between _September 28, 2008_ and _September 27, 2009_ ; ___N/A__ % of the amount of the principal
prepayment if made between _N/A_ and _N/A_ ; ___N/A__ % of the amount of the principal prepayment if
between _N/A_ and _N/A_ ; ___N/A__ % of the amount of the principal prepayment if made between _N/A_ and
_N/A_ and _N/A_ ; ___N/A__ % of the amount of the principal prepayment if made between _N/A_ and
_N/A_ ; ___N/A__ % of the amount of the principal prepayment if made between _N/A_ and _N/A_ .

[ ] _____

_____

_____

_____

_____

_____

**If Borrower is a Corporation:**

**WITNESS:**

_____    NAME OF CORPORATION

By: _____ (SEAL)

_____    Title: _____

By: _____ (SEAL)

Title: _____

**If Borrower is a Partnership, Limited Liability Company, Limited Liability Partnership or
Limited Liability Limited Partnership:**

**WITNESS:**

_____    NAME OF PARTNERSHIP, LLC, LLP OR LLLP

By: _____ (SEAL)

_____    GENERAL PARTNER OR MANAGER

By: _____ (SEAL)

_____    GENERAL PARTNER OR MANAGER

By: _____ (SEAL)

GENERAL PARTNER OR MANAGER

**If Borrower is an Individual**

**WITNESS:** _Burn Dulith_     (SEAL)

WALTER L BLAIR

**Additional Co-makers**

**WITNESS:**

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

June 28, 2007

Walter L. Blair
2600 Sunshine Court
Brookville, MD 20833

Cc: Blair & Associates
    4701 Melbourne Place
    College Park, MD 20740


Re:     NOTICE OF DEFAULT AND DEMAND
        Loan Account Number 9550570952; Note Number 00001
        Amount Due As Of June 28, 2007:  $657,635.85


Dear Mr. Blair:

The loan from BB&T to Walter L. Blair ("Mr. Blair") referenced above is seriously delinquent as of June 28, 2007.  This letter shall constitute notice to Mr. Blair that BB&T has declared the loan in default.  Further, we are hereby making formal demand for payment of the June 28, 2007 payment aggregate outstanding balance of principal, accrued interest and fees in the amount of $657,635.85 as of June 28, 2007, plus daily interest accruing at $137.01 after June 28, 2007.


Please contact me at 301-313-2315 and arrange for payment of the sums demanded or make other arrangements satisfactory to BB&T to repay your indebtedness and obligations on or before 12:00 noon on June 29, 2007. If we do not hear from you by that date and time, we will have no choice but to turn this matter over to our attorneys for collection.  BB&T will be entitled to collect from Mr. Blair an additional sum for attorneys' fees in the amount of 15% of the outstanding balance as permitted by law and as provided in the Note.  Further, due to the fact that your loans are in default, BB&T is hereby advising you that, effective immediately, the applicable interest rate will be changed to the "Default Rate" as provided for in the Note.  The current Default Rate is Prime + 5%.


This matter deserves your immediate attention.  Should you have any questions regarding this letter, please give me a call at the telephone number listed below.

Thank you.

## PLEASE NOTE THE FOLLOWING:

*The Bank shall not accept any payment marked "payment in full" as to a disputed account and reserves the right to reject all such payments.  All communications concerning disputed amounts owed under this Agreement, including any payment tendered in good faith as full satisfaction of the amount owed, are to be sent to the following address:* **Disputed Payoff Department, BB&T - Loan Services P.O. Box 2306 Wilson, NC 27894-2306.** *Should you fail to send the communication or payment purporting to pay any disputed amount due hereunder in full, to the address designated above, this obligation will not be satisfied.  Bank and you agree that tender of a check in full payment of any disputed amount to any address other than noted above shall not constitute tender in good faith.*

Sincerely,



Delinquency Letter to **Error! No text of specified style in document.**
Page 2
June 27, 2007
Rush Seale
Business Services Officer
301-313-2315

July 3, 2007

Walter L. Blair
2600 Sunshine Ct.
Brookeville, MD 20833-1225

Re: DEFAULT AND DEMAND issued on June 28, 2007
      Loan Account Number 9550570952; Note Number 00001
      Amount Due As Of July 3, 2007:  $669,892.58

Dear Mr. Blair:

Branch Banking and Trust Company ("Bank") previously sent Walter L. Blair ("Borrower") a demand letter dated June 28, 2007 pursuant to which the Bank demanded payment of all amounts owed by the Borrower to the Bank under the Loan Documents by noon on June 29, 2007. This letter serves to inform Walter L. Blair that the Bank's acceptance of a $6,000 payment on July 2, 2007 for the above referenced loan does not cure the default. There Bank did not have nor does it currently have an agreement with Borrower, as the Borrower referenced in a memo to Rush Seale on July 2nd. After application of the $6,000 payment the total indebtedness due as of today is as follows:

| | |
|---|---|
| Principal: | $ 651,635.85 |
| Interest as of 7/03/2007 at 2 p.m. | $ 10,204.55 |
| Fee Balance | $ 1,521.16 |
| Prepayment | $ 6,531.02 |
| Total Amount Owed | $ 669,892.58 |

Interest will continue to accrue on the unpaid principal balance that is owed at the rate of 242.05 per day after July 3, 2007. As an act of good faith, the Bank expects that the Borrower deliver payment, in immediately available funds, to fully satisfy all obligations under the note on or before 2 p.m. Friday, July 6, 2007. The Borrower should understand that the acceptance of partial payments (that is, less than the total amount that is owed under the Loan) by the Bank shall not constitute a waiver of the demand status of the Loan or any of the Bank's rights, remedies, or recourse in connection with such defaults. Any such payment will simply be applied to the full balance then due and foreclosure proceedings will be initiated.

### PLEASE NOTE THE FOLLOWING:

*The Bank shall not accept any payment marked "payment in full" as to a disputed account and reserves the right to reject all such payments. All communications concerning disputed amounts owed under this Agreement, including any payment tendered in good faith as full satisfaction of the amount owed, are to be sent to the following address:* **Disputed Payoff Department, BB&T - Loan Services P.O. Box 2306 Wilson, NC 27894-2306.** *Should you fail to send the communication or payment purporting to pay any disputed amount due hereunder in full, to the address designated above, this obligation will not be satisfied. Bank and you agree that tender of a check in full payment of any disputed amount to any address other than noted above shall not constitute tender in good faith.*

Sincerely,

Regina McCoy
Assistant Vice President
202.835.9272

Cc:  Blair & Associates, via FedEx mail



EXHIBIT

5

## AFFIDAVIT OF RUSH SEALE

STATE OF MARYLAND       )
                              ) ss:
COUNTY OF Prince Georges  )

PERSONALLY APPEARED before me, Rush Seale, who first being duly sworn on oath, deposes and says that he is a banking officer for Branch Banking and Trust Company, and duly authorized to make this Affidavit for and on its behalf; that your Affiant has personal knowledge of the facts and matters contained herein and is competent to testify to same, namely:

1.     Your Affiant, immediately prior to joining Branch Banking & Trust Company (BB&T"), was employed as a congressional staff assistant and as a paralegal at the law firm of Gibson, Dunn & Crutcher.

2.     Affiant has been employed by BB&T for approximately one year and has been in his present position in College Park, Maryland, for approximately six months.

3.     That pursuant to instructions by Jeffrey Sherman, Vice President of BB&T and a Regional Credit Officer, Affiant issued a demand letter on June 28, 2007 to Petitioner notifying him of the default, the Bank's decision to accelerate the loan and making demand for payment of the then entire remaining unpaid balance.

4.     On June 29, 2007, Affiant unsuccessfully attempted to contact Petitioner at his home and law office. That afternoon, Affiant was advised by Jeffrey Sherman that no further contact was to be made with the Borrower as the matter had been referred to outside counsel. Should Petitioner contact Affiant, he was instructed to inform Petitioner to speak with Jeffrey Sherman, Vice President or the Bank's attorney;

5.     On July 2, 2007, Petitioner initiated a telephonic conversation with Affiant



EXHIBIT

6

advising him that he had been out of town and was just returning from a vacation. Petitioner

inquired why a demand letter was issued when he was only two payments behind;

6.      When Affiant informed Petitioner to contact Mr. Sherman and Bank counsel,

Petitioner became indignant and repeatedly asked why it was necessary to talk to anyone else

since the demand letter was signed by the Affiant.

7.      When Affiant again informed Petitioner to communicate with either Mr. Sherman

or Bank counsel, Petitioner continued to force the issue of why Affiant would not talk to him.

8.      Aside from a voice mail one or two months earlier from Petitioner promising

payment, the conversation on July 2, 2007 marked the first time that Affiant had actually spoken

with Petitioner.

9.      Petitioner informed Affiant that he would make a partial payment that day and

would bring a second payment, necessary to cure the arrearages, by the end of the week.

Affiant's response and Affiant's almost precise words were as follows: "While the Bank

appreciates any gestures, the demand letter still stands and any payments you make will not

change the demand." Affiant continued to repeat the above two or three more times in the course

of the conversation with Petitioner which ensued. At no time during the conversation was any

verbal agreement/ plan/understanding /commitment or promise made by Affiant to Petitioner that

partial payments would rescind the demand letter or reinstate the loan. Petitioner's final remark

was that you will be receiving something from me soon.

10.     When Petitioner delivered his check for $6,000.00, Affiant was at lunch. Upon

his return and receipt of Petitioner's check, Affiant met with Bruce Sharp, a Vice President at the

BB&T College Park branch office and advised him of the check. In Mr. Sharp's office, both

Affiant and Mr. Sharp placed a conference call, on speaker phone, in an effort to speak with Petitioner. At Petitioner's law office, whoever answered the phone indicated that Petitioner was not in the office and she had not seen him yet and thinks he may still be away on vacation.

11. ·   As is my custom, contemporaneously with my conversation with Petitioner or any BB&T customer, I recorded my file notes in BB&T's "PRO ACTIVE SYSTEM" accessed by my computer. Affiant has printed out, without change, the notes entered immediately following his communications with Petitioner. A copy of the notes are attached as Exhibit A to Affiant's Affidavit.

12.   As a relatively new employee, I neither had the authority to override a regional credit officer's decision relating to a credit facility nor did I, in any way whatsoever, give any assurance, indication or promise to Petitioner that the demand would be withdrawn if he made his two past due installments. His statement that we had an agreement is simply not true, and Ms. McCoy's letter of July 3, 2007 so advises Petitioner that no such agreement exists.

FURTHER YOUR AFFIANT SAYETH NOT.

_____
Rush Seale

Subscribed and sworn to before me this _16th_ day of July, 2007.

_____
Notary Public
My Commission Expires: _03/01/2011_
State of Maryland

–3–

Exhibit A

On July 2, 2007, I (Rush Seale) wrote the following notes following Mr. Blair's phone call to my office and my subsequent conversation with Bruce Sharp. In addition to these typed notes, I marked the date, that it was a telephone call and that it was an "A" (important) contact with the client. These notes are placed on an internal system at BB&T to assist officers in remembering their past history with clients. In this case my notes were brief because I had just given my boss, Bruce Sharp, a full summary of the conversation.

Mr. Blair called to inquire as to why he received a demand letter after only missing 2 payments. He also repeatedly wanted to know why I wanted to talk with him with someone else when it was my name on the demand letter. I told him that I had tried contacting him many times and in May he said he would pay then didnt. Then bruce talked to him and he told Bruce that he would pay then didn't. I repeatedly tried to find the best way to contact him but he would only say his office and that he would now be back there after returning from vacation. He said he would make a payment and then bring it up to date by the end of the week. While I was away he brought in a $6000 payment which covers the May portion (after 2). Bruce and I tried calling him again and asked for him to cal back but had no luck getting ahold of him again. Called Regina and left voicemail to go over with her while Jeff is away. It is Bruce (and my) belief that given this client's history, the bank should not be lenient in this case.



QUESTIONS REGARDING THIS BILL SHOULD BE DIRECTED TO YOUR LOCAL BB&T ACCOUNT OFFICER

**BLAIR & ASSOCIATES LLC**
**IOLTA ACCOUNT**
09/04
1089
PH. 301-474-4700
4701 MELBOURNE PLACE
COLLEGE PARK, MD 20740
65-330/550
10212

Date 7/5/07

Pay to the order of _BB&T_  $ 5,600 00

_Five Thousand Six Hundred_ Dollars

**BB&T**
BRANCH BANKING AND TRUST COMPANY
COLLEGE PARK, MARYLAND

_Mortgage for June 2007_

For Acct No. 9550570952-00001                    _Walter Blair_

_Montgomery & Kelly_

⑈001089⑈ ⑆055003308⑆ 5154238238⑈

VOID

---

**IMPORTANT:** DETACH AND RETURN THE ABOVE PORTION WITH YOUR PAYMENT – RETAIN THIS PORTION FOR YOUR RECORDS.

| CUSTOMER NAME | ACCOUNT NUMBER | STATEMENT DATE | PAYMENT DUE DATE |
|---|---|---|---|
| WALTER L BLAIR | 9550570952-00001 | 06/25/07 | 06/15/07 |

| CURRENT AMOUNT DUE | | | DAILY INTEREST CHARGE | PAST DUE AMOUNT | TOTAL DUE |
|---|---|---|---|---|---|
| PRINCIPAL | INTEREST | FEES | | | |
| .00 | .00 | .00 | 137.0074 | 11,530.09 | 11,530.09 |

| DATE | DESCRIPTION | PRINCIPAL | INTEREST | FEES | INTEREST RATE | OUTSTANDING PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|
| | CURRENT RATE | | | | 7.50 | 657,635.85 |

7/6/07

Dear Mr. Seals & Mr. McCoy

1. This mortgage bill reflects arrears $11,530 09

2. on 7/2/07 I paid (for May 2007) $ 6,000 00

3. on 7/5/07 (received by BB&T) – $5,600 00 (for June 07)

4. This payment demonstrates I have paid this note up-to-date with credit for over late fee now paid.

Sincerely, Walter L Blair

IF YOUR PAYMENT IS NOT RECEIVED BY 08/30/07,
A LATE FEE OF $283.49 WILL BE ASSESSED.

ONLY CHECKS OR MONEY ORDERS SHOULD BE SENT BY MAIL. THE TOP PORTION OF YOUR BUSINESS LOAN STATEMENT.

THIS STATEMENT DOES NOT REFLECT ACTIVITY AFTER STATEMENT DATE ABOVE.

PAYMENTS CAN BE ACCEPTED AT TELLER WINDOWS OF ANY BRANCH. IF PAYMENT IS RECEIVED BY 2:00 P.M., ACCOUNT THE SAME DAY. IF RECEIVED AFTER 2:00 P.M., IT WILL BE CREDITED AS OF THE FOLLOWING BUSINESS.

IF YOU ARE PAYING OFF YOUR LOAN IN FULL, ADD THE DAILY INTEREST CHARGE FOR EACH DAY AFTER THE DATE IS RECEIVED.

**EXHIBIT**
**7**

| MATURITY DATE |
|---|
| 09/15/09 |

Thank You for
Banking with BB&T.

July 6, 2007

Walter L. Blair
2600 Sunshine Ct.
Brookeville, MD 20833-1225

Re: DEFAULT AND DEMAND issued on June 28, 2007
     Loan Account Number 9550570952; Note Number 00001
     Amount Due As Of July 6, 2007: $670,617.00

Dear Mr. Blair:

Branch Banking and Trust Company ("Bank") previously sent Walter L. Blair ("Borrower") a demand letter dated June 28, 2007 pursuant to which the Bank demanded payment of all amounts owed by the Borrower to the Bank under the Loan Documents by noon on June 29, 2007. A second letter was sent on July 3, 2007 informing the Borrower that a partial payment in the amount of $6,000 was accepted and the Bank, in good faith, gave the Borrower until Friday, July 6, 2007, to fully satisfy all obligations under the note. It has been decided not to accept the partial payment in the amount of $5,600; therefore you are hereby notified that check number 1089 drawn off account 5154236238 will be returned. This does not constitute a waiver of the demand status of the Loan or any of the Bank's rights, remedies, or recourse in connection with such defaults.

**PLEASE NOTE THE FOLLOWING:**

*The Bank shall not accept any payment marked "payment in full" as to a disputed account and reserves the right to reject all such payments. All communications concerning disputed amounts owed under this Agreement, including any payment tendered in good faith as full satisfaction of the amount owed, are to be sent to the following address: **Disputed Payoff Department, BB&T - Loan Services P.O. Box 2306 Wilson, NC 27894-2306.** Should you fail to send the communication or payment purporting to pay any disputed amount due hereunder in full, to the address designated above, this obligation will not be satisfied. Bank and you agree that tender of a check in full payment of any disputed amount to any address other than noted above shall not constitute tender in good faith.*

Sincerely,

Regina McCoy
Assistant Vice President
202.835.9272

Cc: Blair & Associates, via FedEx mail

EXHIBIT

8

**jspivok**

| | |
|---|---|
| **From:** | Seale, Rush [RSeale@BBandT.com] |
| **Sent:** | Tuesday, July 10, 2007 3:36 PM |
| **To:** | jspivok; Sherman, Jeff |
| **Cc:** | McCoy, Regina; Sharp, Bruce |
| **Subject:** | Walter Blair |

FYI- (I have already relayed this to Jordan)

I received a call about 15 minutes ago from Fedex regarding Mr. Blair. Karita, based in the Fedex center in Rockville, MD, called to let me know that their courier tried to deliver a package (tracking #856549303213) to Mr. Blair's residence. Upon approaching the residence the courier was asked who the package was from, when he responded that it was from BB&T, he was chased off of the grounds by a man who possibly had a weapon. According to Karita, the courier "will not return to that house under any circumstances." Karita herself tried to call Mr. Blair, and was angrily dealt with by him. She called me to ask my permission for Fedex to return the package after only one attempt rather then their policy of several due to the circumstances.

I told Karita that BB&T was dealing with issues regarding this client and that an attorney, Jordan Spivok, may contact her and she took down his name and put it in the records should Jordan want to call. I also told her that we would accept the package only one attempt because of the possible threat to Fedex employees and after consulting with Jordan he agreed. Jordan suggested that once I receive the letter trying with certified US postage which is what I will do unless otherwise advised. Karita from Fedex can be reached at 1-800-463-3339 and there should be documentation about the case under the package's tracking number.

Let me know what else I can do to further assist,
Rush

**Rush Holt Seale**
Business Services Officer
Branch Banking and Trust

Phone: (301) 313-2315
Fax: (301) 513-0846
9658 Baltimore Ave. Suite #207
College Park, MD 20740

EXHIBIT

9

## <u>AFFIDAVIT OF JEFFREY SHERMAN</u>

UNITED STATES OF AMERICA  )

                                    )  ss:

DISTRICT OF COLUMBIA     )

      PERSONALLY APPEARED before me, Jeffrey Sherman, who first being duly sworn on oath, deposes and says that he is a Vice President of Branch Banking & Trust Company, and duly authorized to make this Affidavit for and on its behalf; that your Affiant has personal knowledge of the facts and matters contained herein and is competent to testify to same, namely:

      1.   Affiant is employed as a Vice President and Regional Credit Officer of Branch Banking & Trust Company, and works primarily from BB&T's offices at 1901 K Street, NW, Washington, DC 20006;

      2.   That your Affiant has read the Opposition to the Petition for Temporary Restraining Order and Preliminary Injunction and affirms the statements therein as true and incorporates by reference the Opposition as if fully set forth herein;

      3.   That your Affiant has never met Walter L. Blair, and has had no personal contact with him. Further, your Affiant was unaware of Mr. Blair's race and had no idea whether Mr. Blair was a Caucasian or an African-American borrower of BB&T;

      4.   Your Affiant's decision to elect to declare a formal default, accelerate the remaining unpaid balance and make formal written demand for payment in full upon the Petitioner, was based solely upon the various factors enumerated in Part V of the Opposition.

      5.   It is your Affiant's practice to review current bureau reports on the Bank's borrowers in assisting to make credit decisions concerning the exercise of the Bank's rights and remedies under the loan documents. Of primary concern to your Affiant, was the fact that Borrower was two (2) months behind on his Note payments and failed to abide by his promise to Bruce Sharpe,



a Senior Vice President in the College Park branch office where the loan originated, to cure the default by June 22, 2007.

6.    A review of Mr. Blair's credit bureau report indicated a bleak financial picture. Specifically, his Beacon Score of 465 with the credit bureau, which Beacon scores are universally employed by financial institutions to assist in their credit evaluations, was low.  The other negative reporting factors also influenced Affiant's decision to demand the Note.

7.    Of particular concern was the fact that Mr. Blair's payment history indicated numerous late payments and many checks which were dishonored upon presentment.

8.    The decision to declare a default was made by me without consultation with William J. Ziegler, BB&T's Senior Credit Officer for the DC Metro region, and Mr. Ziegler had no substantive involvement in this matter.

9.    As I was on vacation during the week of July 1 through July 6, in my absence, Regina McCoy, an Assistant Vice President of BB&T and another regional credit officer, covered for me in my absence and thus signed the letters attached as Respondents' Exhibits 5 and 8.

10.    I have spoken with another BB&T employee, Rush Seale, and have ascertained that Mr. Seale never made any agreement or promise with Petitioner to withdraw the demand for payment in full and accept partial payments to cure the default.

FURTHER YOUR AFFIANT SAYETH NOT.

Jeffrey Sherman

Subscribed and sworn to before me this ___16th___ day of July, 2007.

Deborah L. Tremble
Notary Public

Deborah L. Tremble
Notary Public, District of Columbia
My Comm. Expires: June 14, 2009

```
CL91    *** BUSINESS LOAN - HISTORY INQUIRY ***      TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                      PAGE # 001
                                      TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ        RATE/DATE        TRAN DESC    PRIN-BALANCE

10/01/04 09/28/04 030 11              700,000.00       NEW PRIN        700,000.00
                                      700,000.00       PROCEEDS

10/04/04 10/01/04 002 17 58             3,500.00       ORIGINATIO
                                                       CHARGED

10/04/04 10/01/04 002 42 58             3,500.00       ORIGINATIO
                                                       PAYMENT

10/27/04 10/27/04 111 84                3,190.63       PRIN PMT        696,809.37
                                        2,479.17       INT PMT
                                        5,669.80       TOTL PMT

11/15/04 11/15/04 099 86                1,161.60       PRIN APMT       695,647.77
                                        4,508.20       INT  APMT
                                        5,669.80       TOTL PMT

CUSTOMER # 9550570952 NOTE # 00001          CUSTOMER # 9550570952 NOTE # 00001
         PF4= CL44    PF7= PAGE FORWARD   PF9= FINAL PAGE
```

Marked up copy w/ notes

EXHIBIT

12

.5:47:29 Thu Jul 12, 2007

```
CL91   *** BUSINESS LOAN - HISTORY INQUIRY ***     TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                    PAGE # 002
                                        TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ          RATE/DATE       TRAN DESC    PRIN-BALANCE

11/17/04 11/15/04 070 89 10              1,161.60       PRIN REV       696,809.37
                                         4,508.20       INT REV
                                                        INSUFFICIENT FUNDS
                                         5,669.80       TOTL REV

11/17/04 11/17/04 070 17 20                 30.00       RETURN PMT
                                                        CHARGED

11/24/04 11/24/04 111 84                 1,161.60       PRIN PMT       695,647.77
                                         4,508.20       INT PMT
                                         5,669.80       TOTL PMT

12/15/04 12/15/04 099 86                 1,319.82       PRIN APMT      694,327.95
                                         4,349.98       INT  APMT
                                         5,669.80       TOTL PMT


CUSTOMER # 9550570952 NOTE # 00001        CUSTOMER # 9550570952 NOTE # 00001
 PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

```
CL91   *** BUSINESS LOAN - HISTORY INQUIRY ***   TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                    PAGE # 003
                                     TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ      RATE/DATE      TRAN DESC    PRIN-BALANCE

01/18/05 01/15/05 099 86             1,185.60    PRIN APMT       693,142.35
                                     4,484.20    INT  APMT
                                     5,669.80    TOTL PMT

02/15/05 02/15/05 099 86             1,193.26    PRIN APMT       691,949.09
                                     4,476.54    INT  APMT
                                     5,669.80    TOTL PMT

03/15/05 03/15/05 099 86             1,633.43    PRIN APMT       690,315.66
                                     4,036.37    INT  APMT
                                     5,669.80    TOTL PMT

04/15/05 04/15/05 099 86             1,211.51    PRIN APMT       689,104.15
                                     4,458.29    INT  APMT
                                     5,669.80    TOTL PMT


CUSTOMER # 9550570952 NOTE # 00001      CUSTOMER # 9550570952 NOTE # 00001
 PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

5:47:40 Thu Jul 12, 2007

CL91   *** BUSINESS LOAN - HISTORY INQUIRY ***   TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                     PAGE # 004

| POST-DTE | EFF-DATE | BAT | TC | CD | SEQ | TRAN AMOUNT/ RATE/DATE | TRAN DESC | PRIN-BALANCE |
|----------|----------|-----|-----|-----|-----|------------------------|-----------|--------------|
| 04/19/05 | 04/15/05 | 070 | 89 | 10 | | 1,211.51 | PRIN REV | 690,315.66 |
| | | | | | | 4,458.29 | INT REV | |
| | | | | | | | INSUFFICIENT FUNDS | |
| | | | | | | 5,669.80 | TOTL REV | |
| 04/19/05 | 04/19/05 | 070 | 17 | 20 | | 30.00 | RETURN PMT CHARGED | |
| 04/22/05 | 04/22/05 | 111 | 84 | | | 1,211.51 | PRIN PMT | 689,104.15 |
| | | | | | | 4,458.29 | INT PMT | |
| | | | | | | 5,669.80 | TOTL PMT | |
| 05/16/05 | 05/15/05 | 099 | 86 | | | 1,361.13 | PRIN APMT | 687,743.02 |
| | | | | | | 4,308.67 | INT APMT | |
| | | | | | | 5,669.80 | TOTL PMT | |

CUSTOMER # 9550570952 NOTE # 00001      CUSTOMER # 9550570952 NOTE # 00001
 PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE

15:47:42 Thu Jul 12, 2007

CL91   *** BUSINESS LOAN - HISTORY INQUIRY ***    TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                     PAGE # 005

```
                              TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ  RATE/DATE    TRAN DESC    PRIN-BALANCE

05/18/05 05/15/05 070 89 10       1,361.13    PRIN REV       689,104.15
                                  4,308.67    INT REV
                                              INSUFFICIENT FUNDS
                                  5,669.80    TOTL REV

05/18/05 05/18/05 070 17 20          30.00    RETURN PMT
                                              CHARGED

05/25/05 05/25/05 111 42 20          30.00    RETURN PMT
                                              PAYMENT
05/25/05 05/25/05 111 84          1,361.13    PRIN PMT       687,743.02
                                  4,308.67    INT PMT
                                  5,699.80    TOTL PMT

06/15/05 06/15/05 099 86          1,225.29    PRIN APMT      686,517.73
                                  4,444.51    INT  APMT
                                  5,669.80    TOTL PMT
CUSTOMER # 9550570952 NOTE # 00001        CUSTOMER # 9550570952 NOTE # 00001
  PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

15:47:44 Thu Jul 12, 2007

```
CL91    *** BUSINESS LOAN - HISTORY INQUIRY ***    TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                      PAGE # 006
                                         TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ          RATE/DATE       TRAN DESC    PRIN-BALANCE

06/17/05 06/15/05 070 89 10              1,225.29        PRIN REV        687,743.02
                                         4,444.51        INT REV
                                                         INSUFFICIENT FUNDS
                                         5,669.80        TOTL REV

06/17/05 06/17/05 070 17 20                 30.00        RETURN PMT
                                                         CHARGED

07/13/05 07/12/05 600 42 20                 30.00        RETURN PMT
                                                         PAYMENT
07/13/05 07/12/05 600 86                 1,225.29        PRIN PMT        686,517.73
                                         4,444.51        INT PMT
                                         5,699.80        TOTL PMT

07/15/05 07/15/05 099 86                 1,371.41        PRIN APMT       685,146.32
                                         4,298.39        INT  APMT
                                         5,669.80        TOTL PMT
CUSTOMER # 9550570952 NOTE # 00001        CUSTOMER # 9550570952 NOTE # 00001
 PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

15:47:45 Thu Jul 12, 2007

```
CL91    *** BUSINESS LOAN - HISTORY INQUIRY ***      TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                        PAGE # 007
                                         TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ           RATE/DATE      TRAN DESC    PRIN-BALANCE

07/19/05 07/15/05 070 89 10                1,371.41     PRIN REV       686,517.73
                                           4,298.39     INT REV
                                                        INSUFFICIENT FUNDS
                                           5,669.80     TOTL REV

07/19/05 07/19/05 070 17 20                   30.00     RETURN PMT
                                                        CHARGED

08/02/05 07/29/05 072 84                   1,371.41     PRIN PMT       685,146.32
                                           4,298.39     INT PMT
                                           5,669.80     TOTL PMT

08/15/05 08/15/05 099 86                   1,236.80     PRIN APMT      683,909.52
                                           4,433.00     INT  APMT
                                           5,669.80     TOTL PMT


CUSTOMER # 9550570952 NOTE # 00001        CUSTOMER # 9550570952 NOTE # 00001
  PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

5:47:46 Thu Jul 12, 2007

```
CL91   *** BUSINESS LOAN - HISTORY INQUIRY ***      TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                       PAGE # 008
                                      TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ        RATE/DATE     TRAN DESC    PRIN-BALANCE

08/17/05 08/15/05 070 89 10            1,236.80      PRIN REV        685,146.32
                                       4,433.00      INT REV
                                                     INSUFFICIENT FUNDS
                                       5,669.80      TOTL REV

08/17/05 08/17/05 070 17 20               30.00      RETURN PMT
                                                     CHARGED

.08/31/05 08/31/05 000 17 93             283.49      LATE FEES
                                                     CHARGED

09/15/05 09/15/05 099 86               1,249.76      PRIN APMT        683,896.56
                                       4,420.04      INT  APMT
                                       5,669.80      TOTL PMT



    CUSTOMER # 9550570952 NOTE # 00001      CUSTOMER # 9550570952 NOTE # 00001
     PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

```
CL91   *** BUSINESS LOAN - HISTORY INQUIRY ***    TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                      PAGE # 009
                                        TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ         RATE/DATE      TRAN DESC      PRIN-BALANCE

09/19/05 09/15/05 070 89 10              1,249.76      PRIN REV         685,146.32
                                         4,420.04      INT REV
                                                       INSUFFICIENT FUNDS
                                         5,669.80      TOTL REV

09/19/05 09/19/05 070 17 20                 30.00      RETURN PMT
                                                       CHARGED

09/20/05 09/20/05 111 86                 2,486.56      PRIN PMT         682,659.76
                                         8,853.04      INT PMT
                                        11,339.60      TOTL PMT

10/17/05 10/15/05 099 86                 1,400.58      PRIN APMT        681,259.18
                                         4,269.22      INT  APMT
                                         5,669.80      TOTL PMT


CUSTOMER # 9550570952 NOTE # 00001      CUSTOMER # 9550570952 NOTE # 00001
  PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

15:47:50 Thu Jul 12, 2007

```
CL91   *** BUSINESS LOAN - HISTORY INQUIRY ***    TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                      PAGE # 010
                                       TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ         RATE/DATE        TRAN DESC      PRIN-BALANCE

11/15/05 11/15/05 008 86                1,270.00      PRIN PMT        679,989.18
                                        4,399.80      INT PMT
                                        5,669.80      TOTL PMT

12/15/05 12/15/05 099 86                1,419.87      PRIN APMT       678,569.31
                                        4,249.93      INT  APMT
                                        5,669.80      TOTL PMT

01/17/06 01/15/06 099 86                1,287.38      PRIN APMT       677,281.93
                                        4,382.42      INT  APMT
                                        5,669.80      TOTL PMT

03/01/06 03/01/06 111 84                1,295.68      PRIN PMT        675,986.25
                                        4,374.12      INT PMT
                                        5,669.80      TOTL PMT


     CUSTOMER # 9550570952 NOTE # 00001       CUSTOMER # 9550570952 NOTE # 00001
      PF4= CL44   PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

```
CL91   *** BUSINESS LOAN - HISTORY INQUIRY ***      TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                       PAGE # 011
                                        TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ          RATE/DATE        TRAN DESC      PRIN-BALANCE

03/03/06 03/01/06 069 89 10              1,295.68     PRIN REV          677,281.93
                                         4,374.12     INT REV
                                                      INSUFFICIENT FUNDS
                                         5,669.80     TOTL REV

03/03/06 03/03/06 069 17 20                 30.00     RETURN PMT
                                                      CHARGED

03/09/06 03/09/06 111 84                 1,295.68     PRIN PMT          675,986.25
                                         4,374.12     INT PMT
                                         5,669.80     TOTL PMT

03/10/06 03/03/06 073 18 20                 30.00     RETURN PMT
                                                      CHARGD REV

03/31/06 03/31/06 000 17 93                283.49     LATE FEES
                                                      CHARGED

CUSTOMER # 9550570952 NOTE # 00001          CUSTOMER # 9550570952 NOTE # 00001
  PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

15:47:53 Thu Jul 12, 2007

```
CL91   *** BUSINESS LOAN - HISTORY INQUIRY ***     TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                      PAGE # 012
                                      TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ        RATE/DATE     TRAN DESC     PRIN-BALANCE

04/14/06 04/13/06 604 42 20              150.00      RETURN PMT
                                                     PAYMENT

04/14/06 04/13/06 604 42 93              283.49      LATE FEES
                                                     PAYMENT
04/14/06 04/13/06 604 86               2,001.70      PRIN PMT        673,984.55
                                       3,950.81      INT PMT
                                       6,386.00      TOTL PMT

04/17/06 03/15/06 071 18 93              283.49      LATE FEES
                                                     CHARGD REV

05/01/06 05/01/06 000 17 93              269.35      LATE FEES
                                                     CHARGED


CUSTOMER # 9550570952 NOTE # 00001     CUSTOMER # 9550570952 NOTE # 00001
 PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

15:47:54 Thu Jul 12, 2007

```
CL91    *** BUSINESS LOAN - HISTORY INQUIRY ***    TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                      PAGE # 013
                                         TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ           RATE/DATE      TRAN DESC    PRIN-BALANCE

05/26/06 05/25/06 002 84                 1,022.97       PRIN PMT       672,961.58
                                         4,364.12       INT PMT
                                         5,387.09       TOTL PMT

05/31/06 05/31/06 000 17 93                283.49       LATE FEES
                                                        CHARGED

06/15/06 06/14/06 002 84                 1,458.23       PRIN PMT       671,503.35
                                         4,211.57       INT PMT
                                         5,669.80       TOTL PMT

07/03/06 07/03/06 000 17 93                283.49       LATE FEES
                                                        CHARGED

07/27/06 07/27/06 111 42 93                552.84       LATE FEES
                                                        PAYMENT

CUSTOMER # 9550570952 NOTE # 00001        CUSTOMER # 9550570952 NOTE # 00001
  PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

15:47:55 Thu Jul 12, 2007

```
CL91   *** BUSINESS LOAN - HISTORY INQUIRY ***      TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                      PAGE # 014
                                           TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ            RATE/DATE      TRAN DESC      PRIN-BALANCE

 07/27/06 07/27/06 111 86                   4,348.34      PRIN PMT        667,155.01
                                            1,321.46      INT PMT
                                            6,222.64      TOTL PMT

 07/28/06 07/27/05 071 43 93                  552.84      LATE FEES
                                                          PAYMNT REV

 07/28/06 07/27/06 071 89                   4,348.34      PRIN REV        671,503.35
                                            1,321.46      INT REV
                                            5,669.80      TOTL REV

 07/28/06 07/27/06 071 42 93                  552.84      LATE FEES
                                                          PAYMENT
 07/28/06 07/27/06 071 86                   1,321.46      PRIN PMT        670,181.89
                                            4,348.34      INT PMT
                                            6,222.64      TOTL PMT

    CUSTOMER # 9550570952 NOTE # 00001         CUSTOMER # 9550570952 NOTE # 00001
     PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

15:47:57 Thu Jul 12, 2007

```
CL91    *** BUSINESS LOAN - HISTORY INQUIRY ***    TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                      PAGE # 015
                                       TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ        RATE/DATE      TRAN DESC      PRIN-BALANCE

07/31/06 07/31/06 000 17 93              143.76      LATE FEES
                                                     CHARGED

08/31/06 08/31/06 000 17 93              283.49      LATE FEES
                                                     CHARGED

09/01/06 08/31/06 601 84                    .00      PRIN PMT          670,181.89
                                       2,875.14      INT PMT

09/22/06 09/21/06 601 42 93              710.74      LATE FEES
                                                     PAYMENT
09/22/06 09/21/06 601 86                    .00      PRIN PMT          670,181.89
                                         837.72      INT PMT
                                       1,548.46      TOTL PMT


CUSTOMER # 9550570952 NOTE # 00001       CUSTOMER # 9550570952 NOTE # 00001
   PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

.5:47:58 Thu Jul 12, 2007

```
CL91   *** BUSINESS LOAN - HISTORY INQUIRY ***   TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                    PAGE # 016
                                      TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ        RATE/DATE      TRAN DESC    PRIN-BALANCE

09/22/06 09/21/06 601 86               1,358.32      PRIN PMT       668,823.57
                                       9,981.28      INT PMT
                                      11,339.60      TOTL PMT

10/31/06 10/31/06 000 17 93              283.49      LATE FEES
                                                     CHARGED

11/03/06 11/02/06 002 84               2,325.68      PRIN PMT       666,497.89
                                       3,344.12      INT PMT
                                       5,669.80      TOTL PMT

12/01/06 12/01/06 000 17 93              283.49      LATE FEES
                                                     CHARGED

12/08/06 12/07/06 002 42 93              141.74      LATE FEES
                                                     PAYMENT

CUSTOMER # 9550570952 NOTE # 00001      CUSTOMER # 9550570952 NOTE # 00001
   PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

15:48:00 Thu Jul 12, 2007

```
CL91   *** BUSINESS LOAN - HISTORY INQUIRY ***   TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                    PAGE # 017
                                      TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ        RATE/DATE     TRAN DESC    PRIN-BALANCE

12/08/06 12/07/06 602 42 93              141.75      LATE FEES
                                                     PAYMENT

12/08/06 12/07/06 002 84               1,350.31      PRIN PMT        665,147.58
                                       4,319.49      INT PMT
                                       5,669.80      TOTL PMT

01/02/07 01/02/07 000 17 93              283.49      LATE FEES
                                                     CHARGED

01/16/07 01/12/07 601 42 93              283.49      LATE FEES
                                                     PAYMENT
01/16/07 01/12/07 601 86               1,510.49      PRIN PMT        663,637.09
                                       4,159.31      INT PMT
                                       5,953.29      TOTL PMT


CUSTOMER # 9550570952 NOTE # 00001      CUSTOMER # 9550570952 NOTE # 00001
 PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

.5:48:01 Thu Jul 12, 2007

CL91    *** BUSINESS LOAN - HISTORY INQUIRY ***    TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                    PAGE # 018

                                    TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ      RATE/DATE      TRAN DESC     PRIN-BALANCE

01/31/07 01/31/07 000 17 93            283.49      LATE FEES            .
                                                   CHARGED

02/13/07 02/12/07 002 42 93            566.98      LATE FEES
                                                   PAYMENT
02/13/07 02/12/07 002 84             2,761.06      PRIN PMT        660,876.03
                                     8,578.54      INT PMT
                                    11,906.58      TOTL PMT

02/21/07 02/12/07 025 89             2,761.06      PRIN REV        663,637.09
                                     8,578.54      INT REV
                                    11,339.60      TOTL REV

02/21/07 02/12/07 025 43 93            566.98      LATE FEES
                                                   PAYMNT REV


CUSTOMER # 9550570952 NOTE # 00001    CUSTOMER # 9550570952 NOTE # 00001
  PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE

15:48:03 Thu Jul 12, 2007

```
CL91   *** BUSINESS LOAN - HISTORY INQUIRY ***    TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                      PAGE # 019
                                      TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ        RATE/DATE      TRAN DESC     PRIN-BALANCE

02/21/07 02/12/07 025 86               1,376.31      PRIN PMT        662,260.78
                                       4,323.69      INT PMT
                                       5,700.00      TOTL PMT

03/05/07 03/05/07 000 17 93              283.49      LATE FEES
                                                     CHARGED

03/13/07 03/12/07 002 42 93              330.20      LATE FEES
                                                     PAYMENT
03/13/07 03/12/07 002 84               1,384.75      PRIN PMT        660,876.03
                                       4,285.05      INT PMT
                                       6,000.00      TOTL PMT

03/13/07 03/12/07 002 84                    .00      PRIN PMT        660,876.03
                                         566.98      INT PMT


CUSTOMER # 9550570952 NOTE # 00001       CUSTOMER # 9550570952 NOTE # 00001
  PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

15:48:05 Thu Jul 12, 2007

```
CL91   *** BUSINESS LOAN - HISTORY INQUIRY ***   TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                               PAGE # 020
                                        TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ          RATE/DATE    TRAN DESC    PRIN-BALANCE

04/02/07 04/02/07 000 17 93                 255.14   LATE FEES
                                                     CHARGED

04/17/07 04/16/07 002 84                  1,837.67   PRIN PMT      659,038.36
                                          4,312.33   INT PMT
                                          6,150.00   TOTL PMT

05/01/07 05/01/07 000 17 93                 231.13   LATE FEES
                                                     CHARGED

05/14/07 05/11/07 002 84                  1,402.51   PRIN PMT      657,635.85
                                          4,267.29   INT PMT
                                          5,669.80   TOTL PMT

05/31/07 05/31/07 000 17 93                 231.13   LATE FEES
                                                     CHARGED

   CUSTOMER # 9550570952 NOTE # 00001     CUSTOMER # 9550570952 NOTE # 00001
    PF4= CL44  PF7= PAGE FORWARD  PF8= PAGE BACK  PF9=FINAL PAGE
```

```
CL91   *** BUSINESS LOAN - HISTORY INQUIRY ***   TERMINAL ID 1ZQW DATE 07/12/07
WALTER L BLAIR                                                    PAGE # 021

                                    TRAN AMOUNT/
POST-DTE EFF-DATE BAT TC CD SEQ     RATE/DATE      TRAN DESC    PRIN-BALANCE

07/02/07 06/29/07 054 03           13.250000      RTE CHG NT    657,635.85

07/02/07 07/02/07 000 17 93           283.49      LATE FEES
                                                  CHARGED

07/05/07 07/03/07 603 42 93         1,237.67      LATE FEES
                                                  PAYMENT
07/05/07 07/03/07 603 86              .00         PRIN PMT       657,635.85
                                    139.71        INT PMT
                                  1,377.38        TOTL PMT

07/05/07 07/03/07 603 86          1,550.43        PRIN PMT       656,085.42
                                  3,072.19        INT PMT
                                  4,622.62        TOTL PMT


CUSTOMER # 9550570952 NOTE # 00001      CUSTOMER # 9550570952 NOTE # 00001
     PF4= CL44   FINAL PAGE  -  PF8= PAGE BACK
```

## <u>AFFIDAVIT OF WILLIAM J. ZIEGLER</u>

UNITED STATES OF AMERICA  )

                                  )  ss:

DISTRICT OF COLUMBIA  )

      PERSONALLY APPEARED before me William J. Ziegler, who first being duly sworn on oath, deposes and says that he is a Senior Vice President of Branch Banking and Trust Company, and duly authorized to make this Affidavit for and on its behalf; that your Affiant has personal knowledge of the facts and matters contained herein and is competent to testify to same, namely:

      1.  Affiant is employed as a Senior Credit Officer of Branch Banking and Trust Company, D.C. Metro Region, and works primarily from BB&T's offices at 1909 K Street, NW, Washington, DC 20006;

      2.  As Senior Credit Officer of BB&T, Affiant's primary responsibility is to oversee the loans of One Million Dollars ($1,000,000.00) or more;

      3.  As such, Affiant has never been personally involved with the Walter Blair loan.  Until Mr. Blair telephoned Affiant on July 10, 2007, Affiant had no prior contact with Mr. Blair, had never met Mr. Blair, and was not involved in the day-to-day decision-making concerning the Plaintiff's loan with BB&T;

      4.  On the afternoon of July 10, 2007, Plaintiff called introducing himself as "Attorney Walter Blair" and attempted to engage Affiant in a conversation regarding his loan.  Affiant informed Mr. Blair that since Bank records indicated that his loan had been referred to outside counsel, Affiant did not feel comfortable in speaking with him regarding the matter;

      5.  Mr. Blair continued to ask numerous questions of Affiant regarding his loan and



EXHIBIT

_13_

appeared to become more and more agitated when Affiant indicated he was not in a position to discuss the loan with Plaintiff;

6. Affiant provided Plaintiff the name and phone number of BB&T's counsel in the matter.

7. Mr. Blair indicated he has dealt with same counsel before and ended the conversation threatening to include Affiant in a lawsuit as a defendant along with BB&T.

8. As soon as the phone call ended, Affiant phoned BB&T's counsel and informed him of the conversation with Mr. Blair. Contrary to Mr. Blair's assertions in his pleadings, no statement was made to him by Affiant.

9. The entire conversation lasted less than ninety (90) seconds. To this day, Affiant does not know how Plaintiff obtained his name and number as Affiant was never copied on any correspondence and had no input into the decision making of Jeffrey Sherman, Vice President of BB&T and a Regional Credit Officer handling the Blair loan.

FURTHER YOUR AFFIANT SAYETH NOT.

_____
William J. Ziegler

Subscribed and sworn to before me this __16__ day of July, 2007.

_____
Notary Public
My Commission Expires:

Deborah L. Tremble
Notary Public, District of Columbia
My Comm. Expires: June 14, 2009

District of Columbia Court of Appeals.
In re Walter L. BLAIR, Applicant.
No. 91-BG-699.

Argued Sept. 14, 1995.
Decided Oct. 12, 1995.

Applicant sought admission to bar. The Court of Appeals held that: (1) there was no requirement that identical quorum of Committee on Admissions participate throughout proceedings on application; (2) applicant did not prove his fitness for admission; (3) exaggeration in finding that applicant failed to prove that he did not engage in witness tampering was harmless; (4) adversarial role assumed by Committee member in proceedings did not taint Committee's recommendation; and (5) finding that applicant failed to prove he did not engage in fee-splitting when that conduct was prohibited by ethical rules was not flawed by subsequent change in rules permitting such conduct.

Application denied.

West Headnotes

[1] Attorney and Client ⬤➞7
45k7
Although Court of Appeals must ultimately determine for itself whether a bar applicant should be admitted, Court nevertheless accords great deference to Committee on Admissions' factual findings and in particular to those findings based upon an assessment of a witness' credibility.

[2] Attorney and Client ⬤➞7
45k7
Applicant failed to prove that he possessed moral character and fitness to practice law; applicant's filings with Committee on Admissions exhibited serious lack of candor, and applicant refused to accept responsibility for his conduct and consistently shifted focus to asserted bias against him.

[3] Attorney and Client ⬤➞7
45k7
There was no requirement that an identical quorum of Committee on Admissions participate in all proceedings relating to application for admission to bar over four-year period; what was significant was that a quorum participated in post-remand hearings

and subsequent findings and recommendation concerning application.

[4] Attorney and Client ⬤➞7
45k7
Bar applicant was not entitled to notice that his allegation of drug use against brother-in-law, who earlier had refused to endorse applicant's admission, or that a letter he sent to bar counsel accusing attorney in Office of Corporate Counsel of misuse of government position and blackmail would be matters of inquiry in hearing on applicant's fitness; Committee on Admissions was not required to give applicant notice of every question it might ask, and applicant was aware that underlying issue in hearing was applicant's conduct and candor, an issue to which applicant's allegations were relevant in that they bore on whether applicant's judgment in making unsubstantiated accusations had improved.

[5] Attorney and Client ⬤➞7
45k7
Committee on Admissions was in best position to determine applicant's credibility on issue of whether applicant was involved in filing of motion to recuse a Committee member, and Court of Appeals would not disregard Committee's reliance on recusal motion as it was not clearly erroneous.

[6] Attorney and Client ⬤➞7
45k7
Committee on Admissions was not obliged to hear bar applicant's proposed expert testify as to whether applicant's motion to recuse a committee member was meritorious; Committee could decide issue for itself.

[7] Attorney and Client ⬤➞7
45k7
Exaggeration in finding that bar applicant had history of engaging in witness tampering, when only one incident was proven, was harmless error given that applicant's past witness tampering played only minor role in recommendation that applicant not be admitted.

[8] Attorney and Client ⬤➞7
45k7
Adversarial role assumed by member of Committee on Admissions in bar admission proceedings did not taint Committee's recommendation on application

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT
14

where member did not participate in Committee's deliberations and vote or in drafting of findings and recommendation.

**\*970** Walter L. Blair, pro se, and Sandy V. Lee, Washington, DC, for applicant.

Charles L. Reischel, Washington, DC, for the Committee on Admissions.

Before FERREN, FARRELL, and KING, Associate Judges.

PER CURIAM:

[1] In *In re Blair,* 614 A.2d 523 (D.C.1992) (*Blair I* ), the court remanded this matter to the Committee on Admissions for more detailed findings of fact and recommendations as to specific issues bearing on Blair's fitness for admission to the Bar.    After conducting additional hearings, the Committee unanimously recommended against admission. While this court must ultimately determine for itself whether an applicant should be admitted, *In re Baker,* 579 A.2d 676, 680 (D.C.1990), "we nonetheless accord great deference to the Committee's factual findings and in particular to those findings based upon an assessment of a witness's credibility."   *Blair I,* 614 A.2d at 527 (citing **\*971** *In re Manville,* 494 A.2d 1289, 1292-93 (D.C.1985)).   Assessment of Blair's credibility was critical for the Committee, as it found repeated indication that he had not been candid with it in his testimony.   *See In re Demos,* 579 A.2d 668, 672 (D.C.1990) (en banc) (refusing admittance, relying partly on fact that Mr. Demos "had not been honest and forthright in his testimony before the Committee" and on his "lack of candor before the New Mexico court").

[2] We reject Blair's application for admission substantially for the reasons set forth by the Committee.    Blair has not borne his burden of establishing by a preponderance of the evidence [FN1] that he possesses the moral character and fitness to practice law in the District of Columbia required by D.C.App.R. 46(e) (1995).    We deal here primarily with Blair's multifarious procedural challenges to the fairness of the Committee's findings and recommendation;   though we do not discuss every one, we have considered and reject all of them.

FN1. As Blair's application antedates August 1,

1989, he is subject to the lesser standard of proof. *See Blair I,* 614 A.2d at 527 n. 5.

[3] Blair first argues that no quorum of the Committee participated in the original 1990 hearings and the 1993 post-remand hearings or in the 1994 findings and recommendation.    There is no requirement that an identical quorum participate in all proceedings over a four-year period of time, nor would that ever be likely to happen. [FN2]    What matters is that a quorum of the Committee (Kelly, Fort, [FN3] Nettler, and Moore) participated in the post-remand hearings and the 1994 findings and recommendation.

> FN2. This court recognized in *Blair I* that two members who participated in the original recommendation had been replaced and would not be participating in the remand.  614 A.2d at 529 n. 8.    Contrary to Blair's strained reading of the footnote, the court was simply noting the fact that additional hearings might be necessary for the benefit of new Committee members.    Thus, the court was aware that there could be no identical quorum from start to finish in this case.

> FN3. Blair objects that Fort was not present at the September 14, 1993 hearing.    He did not object at that time or at the subsequent hearing, however, to her taking the hearing on the record.    Judge Kelly was a holdover member of the Committee, D.C.App.R. 46(a), at the time of decision and issuance of the Committee's recommendation.

[4] Second, Blair complains that the Committee failed to provide him with notice that his allegation of drug use by his brother-in-law, Mr. Martin, was to be an issue in the hearing.    In the 1990 proceedings Martin had refused to endorse Blair's admission.    In an effort to discredit Martin, Blair noted in his 1991 opposition to an earlier report of certain Committee members that the witness "at the time was experiencing certain major medical difficulties related to chemical dependencies which may have clouded his judgment."    (This did not prevent Blair from relying on significant portions of his brother-in-law's "incoherent" and "bizarre" testimony in his opposition.)    The Committee viewed the Martin incident "as a continuation of Blair's practice of asserting scandalous personalized allegations against those who do not support him."

Blair's present objection confuses "issues" with questions.    The Committee was not required to give him notice of every question they might ask him.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The underlying issue was Blair's conduct and candor, and allegations such as he made against Martin, if unfounded, were relevant to that inquiry. The focus of the question about the Martin allegation was on whether Blair's judgment in making unsubstantiated accusations had improved. [FN4] Furthermore, after the September 14, 1993 hearing, Blair was on notice that the allegation raised a question and could have prepared to address it at the September 20, 1993 hearing.

> FN4. Blair's judgment in this regard apparently still has not improved. During the 1993 hearings, Blair accused Committee member Reischel of inviting Mr. Martin to his office and "tell[ing Mr. Martin] all kinds of improprieties about [Blair] and that [he] w[as] after [Blair]," an accusation Blair repeats in his brief.

Third, Blair similarly submits that he received no notice that a letter he sent to Bar Counsel and the Committee through his attorney accusing Ms. Dowe, an attorney in the Office of the Corporation Counsel, of misuse of her government position and blackmail *972 would be a matter of inquiry, and further that there was no "evidence to support Mr. Reischel's claim ... against Mr. Blair," [FN5] *i.e.,* that Blair's allegation was bogus. Again, whether Blair made unsubstantiated allegations was relevant to Blair's character and his candor with the Committee, a fact he certainly knew was at issue in the hearings. Blair was questioned about the Dowe letter for some eight transcript pages at the hearing and, while professing little memory of its contents, admitted "there must have been some discussion" about it with his counsel at the time it was sent. There is no support for his claim that the Chair, Judge Kelly, ruled the entire Dowe matter out of bounds at the hearing or have it emerge as a "negative finding" in the Committee's recommendation. [FN6] The Committee found that the Dowe letter was a further instance of Blair's making baseless personal accusations. The Committee had a sufficient basis on which to reach that conclusion.

> FN5. Member Reischel, who was counsel to the Committee at the time, *see* D.C.App.R. 46(a), is employed by the Office of the Corporation Counsel.

> FN6. What the judge did do was deny Mr. Reischel's request to call another witness regarding the letter.

[5][6] Fourth, Blair disputes the Committee's findings with respect to his motion to disqualify Member Speights and its refusal to allow Blair's expert to testify regarding the motion's merit. The Committee found this a telling instance of Blair's "launching an all out personal attack" on his perceived opponents. Blair's notice argument here is no stronger than his previous ones. [FN7] And there is nothing to his claim that Committee member Reischel's questioning "coerced" him into testifying after Blair insisted he had had nothing to do with the recusal pleading and that Reischel should have been questioning Blair's counsel, who filed it. Blair asserts that he was being honest in testifying that he knew nothing about the pleading, hence that it sheds no light upon his credibility. But the Committee was in the best position to determine Blair's credibility, and we will not disregard its reliance on the recusal motion, as it was not clearly erroneous. [FN8]

> FN7. As the Committee pointed out, Blair had particular notice that the recusal motion would be a subject for discussion. *See* Supp.R., Doc. 5(4), Motion to Strike Applicant's Motion to Recuse and/or Disqualify at 2 ("Blair should be aware that his conduct in filing this motion may be weighed in assessing his fitness for admission to the Bar of this jurisdiction.").

> FN8. The Committee was not obliged to hear Blair's proposed expert testify that, despite the highly personalized and insulting language of the recusal motion, it was meritorious--an issue the Committee could decide for itself.

[7] Fifth, Blair challenges as an abuse of discretion the Committee's finding that he has a "history of eng[a]ging in witness tampering" and a "willingness to submit pleadings containing highly inappropriate personal attacks." While the finding of a "history" of witness tampering, supported by only one proven incident--the Maryland case--may go too far, any exaggeration in this regard was harmless because past witness tampering played only a minor role in the Committee's recommendation. It rested instead primarily upon his practice, past and present, of "asserting improper personal attack[s] and making inappropriate allegations against others," and upon his lack of candor with the Committee.

Sixth, in keeping with his penchant for accusations against those who oppose him, Blair asserts that the Committee's findings with respect to his character

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and conduct amount to "impermissible discrimination," *i.e.,* "disciplining a black individual more harshly than a comparable white individual." In a similar vein, he makes recurring suggestions of a conspiracy on the part of the Committee, accusing member Reischel, for example, of concealing a letter, padding the record, and employing a "deceptive device" to tarnish Blair's credibility; accusing the Committee of "hid[ing]" member Speights' voluntary recusal from this court "because [it] would fly in the face of the Committee's claim against Mr. Blair that the motion to recuse her was improper"; and accusing the Committee of having "conjured up" findings, of dishonesty with this court and of "unleash[ing] its wrath" on him. As in *Demos, supra,* these intemperate broadsides, unsupported *973 by evidence, make us profoundly doubtful of Blair's fitness to engage in the practice of law.

[8] Seventh, Blair points to what he calls "Committee Counsel's [Reischel's] prosecutorial and hostile conduct throughout these proceedings." Blair is correct that Reischel assumed an adversary role in the remand and hearings because of (in Reischel's words) the "complicated nature" of the case and the advantage to the Committee of having "an adversary development of the case." But precisely for this reason, Reischel did not participate in the Committee's deliberations and vote or in the drafting of the findings and recommendation. In these circumstances, Blair can point to no way in which Reischel's role somehow tainted the Committee's recommendation to us. [FN9]

> FN9. Reischel's role here is not unlike instances where the Committee conducts independent investigations on applicants who have committed serious crimes in the past, *see Manville,* 494 A.2d at 1294, a role that can quickly acquire "prosecutive" characteristics.

Eighth, Blair argues that the Committee's conclusion that he had not proven by a preponderance of the evidence that he did not engage in improper fee-splitting in the mid-1980's is flawed in that division of fees with non-lawyers is no longer prohibited. [FN10] Notwithstanding recent changes in our ethics rules, fee-splitting was unethical at the time of Blair's conduct. *See* DR 3-102. Moreover, the Committee was concerned not so much with whether Blair had engaged in fee-splitting as it was with his lack of candor in explaining his income during the relevant period.

> FN10. See Rule 5.4(a)(4), RULES OF PROFESSIONAL CONDUCT (1995).

\* \* \*

We agree with the Committee that Blair's past conduct as a litigator in West Virginia (and most likely any fee-splitting he engaged in in 1985-86) would not prevent his admission if he had been able to demonstrate a substantial change in character and in his recognition of his ethical responsibilities. Blair failed to do that. Despite his assertion that he has been forthright with the Committee in these proceedings, his filings with the Committee have exhibited a serious lack of candor. He has refused to accept responsibility for his conduct and shifted the focus at each opportunity to an asserted bias against him lurking in the Committee's proceedings and recommendation. In this sense his conduct parallels that of the applicant in *Demos, supra,* whom we denied admission substantially for those reasons. On the whole, Blair has failed to exhibit the "qualities of truth-speaking, of a high sense of honor, or granite discretion, ... that have ... been compendiously described as [the] 'moral character' necessary for the practice of law." *Demos,* 579 A.2d at 674 (internal quotations and citation omitted). Blair has not carried his burden of persuading us that he is fit for admission to the Bar.

*So ordered.*

665 A.2d 969

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
- - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                        :
SUNTRUST BANK,                          :
                                        :
        Plaintiff,                      :
                                        :
              v.                        :        Civil No. 269442
                                        :
WALTER L. BLAIR,                        :
                                        :
        Defendant.                      :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

HEARING

Rockville, Maryland

May 22, 2006

EXHIBIT

/5

DEPOSITION SERVICES, INC.
6245 Executive Boulevard
Rockville, MD 20852
(301) 881-3344



IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
------------------------------x
                              :
SUNTRUST BANK,                :
                              :
          Plaintiff,          :
                              :
               v.             :       Civil No. 269442
                              :
WALTER L. BLAIR,              :
                              :
          Defendant.          :
                              :
------------------------------x
```

Rockville, Maryland

May 22, 2006

WHEREUPON, the proceedings in the above-entitled

matter commenced

BEFORE:    THE HONORABLE RONALD B. RUBIN, JUDGE

APPEARANCES:

FOR THE PLAINTIFF:

JORDAN M. SPIVOK, Esq.
4550 Montgomery Avenue, Suite 1125
Bethesda, Maryland  20814


FOR THE DEFENDANT:

WALTER L. BLAIR, Esq.
Blair & Lee, P.C.
4701 Melbourne Place
College Park, Maryland  20740

DEPOSITION SERVICES, INC.

1 notice provision contained in it, which this, I don't, I

2 couldn't find it, I looked for it, that was violated.  You

3 heard the prior case about notice.

4          MR. SPIVOK:  Yes.

5          THE COURT:  But the rights of the parties are

6 governed by the terms of the instrument, and these are

7 sophisticated parties on both sides.  It's not -- and besides,

8 Maryland doesn't recognize that anyway, like the District of

9 Columbia does.  Everybody has a duty to read the instrument.

10 That law, that rule has been reaffirmed by the Court of Appeals

11 as of last month.  The instrument says what it says.  It's in

12 proper form under the Uniform Commercial Code.

13          MR. BLAIR:  Your Honor --

14          THE COURT:  Mr. Blair, as I understand the Uniform

15 Commercial Code and the law of negotiable instruments and

16 demand notes, the only defense is payment.  And apparently

17 that's lacking here, so --

18          MR. BLAIR:  Your Honor, I must disagree.

19          THE COURT:  Okay.

20          MR. BLAIR:  Then that means that the bank could

21 willy-nilly, if you're making your monthly payments, just

22 willy-nilly say I want all the money now.  Well, that is now

23 how the bank does business.  If the bank's going to do the

24 business that way with me, I've alluded to the fact that I

25 believe it's racially discriminatory, because you just can't

1  grab me out of the bunch and say oh, I want all the money back.

2              THE COURT:  Well, let me be --

3              MR. BLAIR:  And then you've got --

4              THE COURT:  -- clear for the record.  There's no

5  evidence in this case that what the bank did is based on sex,

6  gender, race, or anything like that.

7              MR. BLAIR:  Your Honor --

8              THE COURT:  This is a commercial loan to a reputable

9  attorney, who for whatever reason didn't pay the note according

10  to its tenor.  There's no basis, counsel, that I see.

11              MR. BLAIR:  Your Honor --

12              THE COURT:  I  wouldn't inject that issue unless

13  there's --

14              MR. BLAIR:  Your Honor --

15              THE COURT:  -- some factual basis that you think the

16  bank is treating you differently because of your race.

17              MR. BLAIR:  Your Honor, I --

18              THE COURT:  I don't see it in the papers.

19              MR. BLAIR:  Well, Your Honor, you never see these

20  things in the papers.  That's why subpoenas, documents,

21  research, will flush these things out.  What is on face value

22  is never the case when you have to get into these types of

23  racially discriminatory type of matters.  You have to fight,

24  dig in, and it's there.

25              My point is, Your Honor, if the bank's going to

## SUPPLEMENTAL AFFIDAVIT OF WILLIAM J. ZIEGLER

UNITED STATES OF AMERICA    )
                                ) ss:
DISTRICT OF COLUMBIA        )

PERSONALLY APPEARED before me William J. Ziegler, who first being duly sworn on oath, deposes and says that your Affiant has personal knowledge of the facts and matters contained herein and is competent to testify to same, namely:

1. Affiant was born in Baltimore City and has been a life-long resident of Maryland;

2. Your Affiant owns real property and lives in Howard County, Maryland, on a full-time basis;

3. Your Affiant possesses a Maryland driver's license and is a registered voter in the state of Maryland;

4. As stated in my first Affidavit, I never made any such statement which Petitioner attributes to me as being a racial slur;

5. As I had no knowledge of the particulars of this credit facility, I did not wish to engage Petitioner in a conversation and requested that he contact our counsel;

7. Stated otherwise, Petitioner has blatantly invented a statement and has attributed it to one whom he has never met and has spoken to on one occasion for 90 seconds or less.

FURTHER YOUR AFFIANT SAYETH NOT.

_____
William J. Ziegler

Subscribed and sworn to before me this _17th_ day of July, 2007.

_____
Notary Public
My Commission Expires: _June 14, 2009_

G:\users docs\marcies\BB&T\J36670  Walter Blair\Supplemental Affidavit of William Ziegler.wpd

**EXHIBIT**
*16*

G:\users docs\marcies\BB&T\J36670  Walter Blair\Opposition to TRO.wpd

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **WALTER BLAIR**<br>**2600 Sunshine Court**<br>**Brookeville, MD 20833** | : <br> : <br> : <br> : |
| **Petitioner** | : <br> : |
| **v.** | : <br> : |
| **WILLIAM ZIEGLER**<br>**2754 Thornbrook Road**<br>**Ellicott City, MD 21042** | : <br> : <br> : <br> : |
| **and** | : <br> : |
| **BRANCH BANKING AND TRUST COMPANY** | : |
| **1909 K Street, NW**<br>**Washington, DC 20006** | : <br> : <br> : |
| **Respondents.** | : <br> : |

Case No.  1:07-CV-01253<br>Judge Ellen S. Huvelle<br>Next Event: Hearing on 7/20/07 for<br>TRO and Preliminary Injunction

## ORDER

UPON CONSIDERATION of Petitioner's Petition for Temporary Restraining Order and Preliminary Injunction, and the Opposition thereto, the Court having read and considered same, and having heard oral argument, it is, by the United States District Court for the District of Columbia, this _____ day of _____, 2007,

ORDERED, that the Petition for Temporary Restraining Order and Preliminary Injunction be, and the same hereby is, DENIED WITH PREJUDICE.

BY THE COURT:

_____
Ellen S. Huvelle, District Court Judge